OPINION
{¶ 1} Plaintiff, Daimler/Chrysler Truck Financial ("Daimler Chrysler"), appeals from a final judgment in favor of Defendant, Joseph Kimball.
 {¶ 2} In May of 2003, Kimball purchased a 2000 Kenworth Tractor Freightliner truck from SelecTrucks of Indianapolis *Page 2 
LLC. The cash sale price of the truck was $55,500.00. Kimball made a down payment of $8,585.00, leaving an unpaid cash balance of $46,915.00. Kimball agreed to finance the unpaid cash balance over 51 monthly payments. Kimball signed a contract that set forth the amount of the monthly payments, along with other terms and conditions. SelecTrucks of Indianapolis LLC subsequently assigned the contract between SelecTrucks and Kimball to Daimler Chrysler.
 {¶ 3} Kimball made several monthly payments under the contract. At some point in 2004, Kimball began suffering financial hardship and fell behind in his monthly payments to Daimler Chrysler. In November of 2004, Daimler Chrysler sent Kimball a Final Notice of Default. Daimler Chrysler repossessed the truck in June of 2005. On June 29, 2005, Daimler Chrysler sent a Notice of Sale to Kimball, which explained that the truck would be sold by private sale and that Daimler Chrysler may sue Kimball if the price obtained in the private sale was less than the outstanding indebtedness. Daimler Chrysler accepted bids for the truck over a private Internet site during a five-day period in July of 2005. The truck was sold to the highest bidder.
 {¶ 4} On May 3, 2006, Daimler Chrysler commenced an action in municipal court against Kimball to recover an unpaid *Page 3 
balance in the amount of $13,001.16 due as a deficiency following the sale. Kimball filed an Answer, denying the allegations. Daimler Chrysler moved for summary judgment, which the trial court denied on December 1, 2006. A trial was held on December 1, 2006. On January 12, 2007, the trial court entered judgment for Kimball on findings that, among other things, the sale of the collateral by Daimler Chrysler was a private sale and not commercially reasonable. Daimler Chrysler filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "WHETHER THE TRIAL COURT ERRED IN DENYING DAIMLER-CHRYSLER'S MOTION FOR SUMMARY JUDGMENT?"
SECOND ASSIGNMENT OF ERROR
 {¶ 6} "WHETHER THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF DEFENDANT?"
 {¶ 7} We find that the trial court erred when it granted judgment for Defendant Kimball on Plaintiff Daimler Chrysler's claim for relief. However, because the record demonstrates that the court's error was invited by Daimler Chrysler, we will overrule the errors Daimler Chrysler assigns and affirm the judgment from which this appeal was taken.
 {¶ 8} The complaint that Daimler Chrysler filed (Dkt 1) is framed as a complaint on an account for monies due and owin *Page 4 
following Daimler Chrysler's sale of the secured collateral. No statutory authority for that right to relief is cited in the pleadings. However, in the memorandum in support of the motion for summary judgment (Dkt 7) that Daimler Chrysler filed on August 10, 2006, Daimler Chrysler made the following argument:
 {¶ 9} "This is an action brought pursuant to the Ohio RetailInstallment Sales Act (Ohio Rev. Code Sections 1317.01, et seq.)
 {¶ 10} "Plaintiff has fully complied with the Act in establishing its deficiency balance. Section 1317.12 of the Code permits the repossession of the collateral upon default. Plaintiff fully complied withal [sic] procedural requirements.
 {¶ 11} "Section 1317.16 authorized the sale of the collateral upon notice to the debtor. Plaintiff fully complied with all procedural requirements in the sale.
 {¶ 12} "Defendant has not objected to any element in the sale procedure.
 {¶ 13} "Plaintiff is therefore entitled to Judgment as a matter of law." (Emphasis supplied)
 {¶ 14} The trial court denied the motion for summary judgment, without an explanation for its ruling. (Dkt 14). *Page 5 
At trial, Daimler Chrysler offered evidence to prove that it was entitled to a deficiency judgment under the provisions of Ohio's Retail Installment Sales Act ("RISA"), R.C. Chapter 1317. Indeed, on appeal, Daimler Chrysler repeats the contention, stating: "This is an action brought pursuant to the Ohio Retail Installment Sales Act, R.C. 1317.01, et seq. Daimler Chrysler complied with all relevant provisions of the Act and therefore is entitled to judgment as a matter of law." (Brief, p. 10). And, "[a]s previously mentioned, the Contract at issue in this case is governed by the Ohio Retail Installment Sales Act. R.C. 1317.01, et seq." (Brief, p. 14).
 {¶ 15} The deficiency balance owed by Kimball that Daimler Chrysler sought is the amount due and owing under their contract after Daimler Chrysler's sale of the truck, which was the collateral in which Daimler Chrysler had been granted a security interest by Kimball. R.C. 1317.16, the section of the RISA on which Daimler Chrysler relied for the judgment it sought, governs disposition of collateral by a secured party.
 {¶ 16} Paragraph (A) of R.C. 1317.16 provides that the secured party "may, after default, dispose of any or all of the collateralonly as authorized by this section." Paragraph (B) states: "Disposition of the collateral shall be by public *Page 6 
sale only," and that "the method, manner, time, place, and terms thereof shall be commercially reasonable," and further, that prior notice of the sale must be published for ten days in a newspaper of general circulation in the court where the sale takes place. Paragraph (C) permits disposition pursuant to alternative sections of the U.C.C., "[e]xcept as modified by this section."
 {¶ 17} One of the alternative U.C.C. sections referenced in R.C.1317.16(C) is R.C. 1309.610, which contains a similar requirement concerning a "commercially reasonable" sale, but further provides that the sale may be either private or public. Per R.C. 1.51, special provisions prevail over conflicting general provisions. Application of R.C. 1309.610 would appear to be excluded, or "modified" for purposes of R.C. 1317.16(C), by the more specific "public sale" requirement of R.C.1317.16(B).
 {¶ 18} Webster's Third International New Dictionary defines a public sale to be "an auction." Black's Law Dictionary, Seventh Edition, defines a public sale as "[a] sale made after public notice, as in an auction or sheriff's sale."
 {¶ 19} When asked to describe the process by which Daimler Chrysler disposed of the collateral secured in its agreement with Defendant Kimball, Plaintiff Daimler Chrysler's witness, *Page 7 
Greg Showalter, testified:
 {¶ 20} "We have an online auction site that is called usedtruckinventory.com, and the — the essence of the, of the web site is for the online auction is for us to be able to dispose of trucks, only trucks whether they happen to be repossessed or if the vehicle is coming off of a lease for customers that we might have leased vehicles to as well as other corporate inventory.
 {¶ 21} "The only bidders that — a bidder has to be registered with us and they have to be a licensed dealer in order to be a bidder or potential buyer. It is not a public sale. It is a private sale.
 {¶ 22} "We are one of the — probably the best asset of this particular auction site is it is a national auction so we are able to tap into all of the different markets across the country with regards to each individual truck, and it'll bring the most aggressive purchasers to the site and derive the greatest value for the vehicle as possible." (T. 8)
 {¶ 23} Showalter's testimony that the sale was private, not public, is supported by the June 29, 2005 "Notice of Sale (Ohio)" that Daimler Chrysler served on Kimball pursuant to R.C. 1317.12. It states: "If the vehicle has not been redeemed as set forth below, the vehicle will be sold by *Page 8 
private sale on or after July 14, 2005."
 {¶ 24} Failure to comply with the strict mandates of R.C. 1317.16
precludes the secured party from recovering a deficiency judgment.Centran Bank of Akron v. Hamilton (Dec. 29, 1992), Summit App. No. 10774; Huntington Bank v. Freeman (1989), 53 Ohio App.3d 127, 130-31,560 N.E.2d 251; Huntington National Bank v. Stockwell (1983),10 Ohio App.3d 30, 460 N.E.2d 303. The trial court granted judgment for the Defendant (Dkt 16), making the following findings concerning Daimler Chrysler's disposition of the collateral:
 {¶ 25} "After repossession, Plaintiff sold the truck for $32,000.00. The sale of the repossessed truck was somewhat questionable as to whether the vehicle was sold in a commercially reasonable manner.
 {¶ 26} "For example, first the sale was a private sale on a dealer-only website. Second, the sale was for only a four to five day period of advertisement.
 {¶ 27} "Third, the sale price would seem to be way on the low side."
 {¶ 28} On appeal, Daimler Chrysler argues that the trial court erred in applying R.C. 1317.16 to the evidence presented, because its transaction with Kimball was of a commercial nature and the collateral it involved was of a *Page 9 
commercial character, making the method of its disposition by Daimler Chrysler "commercially reasonable," which is the standard R.C.1317.16(B) imposes.
 {¶ 29} Whether we believe Daimler Chrysler's internet auction was commercially reasonable or not, the fact remains that R.C. 1317.16(A) and (B) mandate that a secured party's disposition of collateral secured in an agreement within the coverage of the RISA must be through a public sale. By limiting access to dealers as it did, the method of sale that Daimler Chrysler used was unquestionably private, not public. Therefore, because failure to comply with the strict mandates of R.C. 1317.16
precludes a secured party from recovering a deficiency judgment,Huntington National Bank v. Stockwell, we cannot find that the trial court abused its discretion when, on the record before it, the court denied Daimler Chrysler's motion for summary judgment and subsequently granted judgment for Kimball on Daimler Chrysler's claim for relief.
 {¶ 30} Having said that, we necessarily make a further finding, which is that the trial court erred when it applied the provisions of the RISA, R.C. Chapter 1317, to Daimler Chrysler's claim for relief.
 {¶ 31} R.C. Chapter 1317 applies to "retail installment sales," which are defined broadly by R.C. 1317.01(A) to *Page 10 
include sales of "specific goods" pursuant to an installment contract. "Specific goods" is defined by R.C. 1317.01(D) to mean those goods identified in the contract. However, R.C. 1317.01(C)(1) states:
 {¶ 32} "`Goods' means all things, including specially manufactured goods but not including the money in which the price is to paid or things in action, that satisfy both the following:
 {¶ 33} "(a) They are movable at the time of identification for sale or identification to the contract for sale;
 {¶ 34} "(b) They are purchased primarily for personal, family, orhousehold purposes." (Emphasis supplied.)
 {¶ 35} Several courts have held, without elaboration, that installment contracts for the purchase of goods used for a commercial purpose are not subject to the RISA: Allis-Chalmers Credit Corp. v. Herbolt (1984),17 Ohio App.3d 230 [a combine used in farming]; Booth v.Hendershot, Guernsey App. No. 02CA08, 2002-Ohio-6794 [a farm tractor]; and CIT Financial Services v. Brents (Oct. 11, 1984), Montgomery App. No. 8676 [a Mack truck].
 {¶ 36} Notably, the Brents case was decided by our court and involved the very same kind of collateral as the present case. We held: "[A]s the appellant bought the collateral *Page 11 
involved, a Mack truck, strictly for business purposes, in order to operate as an independent contractor for a trucking company, . . . [t]he statutory provisions governing retail installment sales, Chapter 1317 of the Ohio Revised Code, are therefore clearly inapplicable to the case at hand." Id.
 {¶ 37} The basis for excluding retail installment contracts for property purchased for a commercial use from the coverage of the RISA is in R.C. 1317.01(C)(1)(b), which limits the application of the RISA to installment contracts involving goods that are "purchased primarily for personal, family, or household purposes." It is undisputed that Kimball purchased the truck at issue for commercial purposes and devoted it to a commercial use. On this record, and consistent with our prior holding in Brents, the retail installment contract at issue is not within the coverage of R.C. Chapter 1317, and disposition of the collateral was therefore not governed by R.C. 1317.16. Instead, the provisions of the U.C.C. apply; and, more specifically, R.C. 1309.610, which authorizes commercially reasonable private sales.
 {¶ 38} Daimler Chrysler's arguments on appeal accord with the provisions of R.C. 1309.610. Indeed, applying that section, we would agree that the method Daimler Chrysler used to dispose of the secured collateral was a "commercially *Page 12 
reasonable" private sale. Further, because R.C. 1317.16(B) has no application, there was no need to advertise the sale in the way the trial court found. And, on this record, the court's finding that the price realized was "way on the low side" lacks support in the record. Therefore, had the trial court applied R.C. 1309.610 to the claim for relief presented, it should have entered judgment for Daimler Chrysler instead of for Kimball.
 {¶ 39} Nevertheless, we cannot find that Daimler Chrysler is entitled to a reversal of the judgment for Kimball which the trial court granted. Daimler Chrysler urged the trial court to apply and follow R.C. 1317.16
to its claim for relief, and continues to urge application of that section on appeal. Daimler Chrysler therefore invited the trial court to commit the error of which Daimler Chrysler complains on appeal.
 {¶ 40} "The doctrine of invited error is a corollary of the principle of equitable estoppel. Under the doctrine of invited error, an appellant, in either a civil or a criminal case, cannot attack a judgment for errors committed by himself or herself; for errors that the appellant induced the court to commit; or for errors into which the appellant either intentionally or unintentionally misled the court, and for *Page 13 
which the appellant is actively responsible. Under this principle, a party cannot complain of any action taken or ruling made by the court in accordance with that party's own suggestion or request." 5 Ohio Jurisprudence 3d (1999, Supp. 2007) 170-71, Appellate Review, Section 448, (internal citations omitted).
 {¶ 41} Having misled the trial court to commit the error in applying the RISA to its claim, Daimler Chrysler is estopped from complaining on appeal that the trial court applied the provisions of R.C. 1317.16(A) and (B) for reasons that were improper, when those reasons and findings were proper under the section of the RISA that Daimler Chrysler urged the court to apply, R.C. 1317.16. The judgment of the trial court will be affirmed.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1