[Cite as *Lundeen v. Smith-Hoke*, 2015-Ohio-5086.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James E. Lundeen, Sr., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-236 |
| v. | : | (C.P.C. No. 14CVH-12-13210) |
| Robin Smith-Hoke et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 8, 2015

*James E. Lundeen, Sr.*, **pro se.**

*Benesch Friedlander Coplan & Aronoff, William Schonberg, Patrick O. Peters*, **and** *David A. Landman*, **for appellees.**

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, James E. Lundeen, Sr., appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Robin Smith-Hoke, Clifford W. Croley, Croley Martell & Associates, Ltd., and Main Market Partners, LLC (collectively referred to as "appellees"), dismissing appellant's complaint for failure to state a claim on which relief could be granted. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Ricera Intermediate Holdings ("RIH") is the sole shareholder of Ricera Biosciences, LLC ("Ricera"), a company involved in pharmaceutical research. On or about September 22, 2014, appellant "noticed news articles on the Internet about the potential closing of [Ricera] with the loss of 199 jobs if a suitable buyer could not be found in a hurry." (Complaint, ¶ 18.) Appellant also learned that Ricera hired appellee Clifford W.

Croley, a partner in appellee Croley Martell & Associates, Ltd., as its "chief restructuring officer." (Complaint, ¶ 19.)

{¶ 3} Appellant was familiar with Ricera because his company, DevRx, LLC, had done business with Ricera in early 2014 and had executed a non-disclosure agreement in connection therewith. According to the complaint, appellant's affidavit, and the exhibits attached thereto, after reading the news articles about Ricera, appellant contacted a senior Ricera employee requesting a meeting.[1] Appellant's request was forwarded to Ricera's then CEO/president, Tim Derrington, who agreed to meet with appellant. In a subsequent meeting with Derrington on September 23, 2014, appellant expressed his interest in purchasing Ricera. According to the complaint and affidavit, Derrington provided appellant with some financial information about Ricera and discussed a potential business plan for Ricera should appellant purchase the company. Appellant was to present this information to his prospective financier, Justin Calvillo.

{¶ 4} The complaint recounts two October 17, 2014 telephone conversations between appellant, Calvillo, appellee Smith-Hoke, Ricera's chairman of the board, and two other Ricera employees. As a result of the conversation, appellant executed a confidential disclosure agreement ("CDA") permitting appellant access to confidential financial information from Ricera and authorizing him to discuss future lease terms with Ricera's current landlord, Gladstone Commercial Corporation ("Gladstone"). Appellant alleges that Smith-Hoke informed him that obtaining an agreement with Gladstone was the most important element of a successful bid and that "nothing else really mattered." (Complaint, ¶ 37.) According to the complaint, "Smith-Hoke stated that due to the 'fire sale' nature of the business, the owners did not realistically anticipate multiples or significant monetary bids." (Complaint, ¶ 38.)

{¶ 5} Based on his conversations with Smith-Hoke, Calvillo's review of Ricera's financial information, and appellant's discussions with Gladstone, appellant submitted a letter of intent ("LOI") to Smith-Hoke on October 26, 2014. The LOI contains an "aggregate price of one dollar" for the purchase of Ricera's assets. (Affidavit, ¶ 50, Exhibit OO.) The complaint alleges that Smith-Hoke rejected the LOI because "it did not follow

---

[1] The complaint expressly incorporates appellant's affidavit. (Complaint, ¶ 8.)

her counsel on what would constitute a competitive bid."  (Complaint, ¶ 46.)   On October 27, 2014, appellant submitted a second LOI with a purchase price "which exceeded his first by $7,300,000.00."  (Complaint, ¶ 57.)  On October 28, 2014, Smith-Hoke informed appellant that she had forwarded his second LOI to Ricera's Board of Directors but that the board had selected another bidder.

{¶ 6}  On November 14, 2014, RIH sold Ricera to Main Market Partners, LLC ("Main Market"), at which time Ricera installed Croley as its chief executive officer.  As its executive vice president, Ricera selected Main Market's registered agent, Michael Martell, who was also a partner in Croley Martell & Associates, Ltd.[2]

{¶ 7}  On December 17, 2014, appellant filed a complaint against appellees seeking damages and a court-ordered constructive trust over the Ricera assets conveyed to Main Market.  Appellees filed a joint motion to dismiss the complaint pursuant to Civ.R. 12(B)(6).  On March 4, 2015, the trial court granted the motion.  On March 31, 2015, appellant filed a timely notice of appeal to this court from the judgment of the trial court.

## II.  ASSIGNMENTS OF ERROR

{¶ 8}  Appellant assigns the following as error:

> [1.] THE TRIAL COURT ERRED WHEN IT DISMISSED LUNDEEN'S ACTION FOR LACK OF STANDING TO BRING SUIT OVER THE ADVERSE OUTCOME OF A DISPUTED COMMERCIAL TRANSACTION.
>
> [2.] THE TRIAL COURT ERRED WHEN IT DISMISSED LUNDEEN'S ACTION WITHOUT A JURY TRIAL.
>
> [3.] THE TRIAL COURT ERRED WHEN IT FAILED TO ADEQUATELY ACKNOWLEDGE OR RULE ON LUNDEEN'S COUNT OF BAD FAITH.
>
> [4.] THE TRIAL COURT ERRED WHEN IT MISSTATED LUNDEEN'S CONVERSION COUNT AND THEN RULED BASED ON THE MISSTATED COUNT.
>
> [5.] THE TRIAL COURT ERRED WHEN IT FOUND THAT LUNDEEN DID NOT ADEQUATELY PLEAD COUNT ONE Intentional Tort—Fraudulent Misrepresentation.

---

[2] The complaint alleges that Croley has an ownership interest in Main Market.

[6.] THE TRIAL COURT ERRED WHEN IT FOUND THAT LUNDEEN DID NOT ADEQUATELY PLEAD COUNT TWO Intentional Tort—Fraudulent Concealment.

[7.] THE TRIAL COURT ERRED WHEN IT FOUND THAT LUNDEEN DID NOT ADEQUATELY PLEAD COUNT THREE Intentional Tort—Collusion/Bid Rigging.

[8.] THE TRIAL COURT ERRED WHEN IT FOUND THAT LUNDEEN DID NOT ADEQUATELY PLEAD COUNT FOUR Intentional Tort—Tortious Interference with Contract Negotiations.

[9.] THE TRIAL COURT ERRED WHEN IT FOUND THAT LUNDEEN DID NOT ADEQUATELY PLEAD COUNT SEVEN Intentional Tort—Unjust Enrichment/Constructive Trust.

## III. STANDARD OF REVIEW

{¶ 9} "A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted 'is procedural and tests the sufficiency of the complaint.' " *McBroom v. Safford*, 10th Dist. No. 11AP-885, 2012-Ohio-1919, ¶ 7, quoting *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992), citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). "In order for a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.' " *Id.*, quoting *Grey v. Walgreen Co.*, 8th Dist. No. 96846, 2011-Ohio-6167, ¶ 3, citing *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14.

{¶ 10} "An appellate court employs 'a de novo standard of review for motions to dismiss filed pursuant to Civ.R. 12(B)(6).' " *Id.* at ¶ 9, quoting *Grey* at ¶ 3, citing *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990), *overruled in part on other grounds*, *Tulloh v. Goodyear Atomic Corp.*, 62 Ohio St.3d 541 (1991). "Under de novo analysis, we are required to 'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.' " *Id.*, quoting *Grey* at ¶ 3, citing *Byrd v. Faber*, 57 Ohio St.3d 56 (1991). "In ruling on a Civ.R. 12(B)(6) motion, a trial court ' "cannot resort to evidence outside the complaint to support dismissal [except] where certain written instruments are attached to the complaint." ' "

*Id.* at ¶ 8, quoting *Brisk v. Draf Industries*, 10th Dist. No. 11AP-233, 2012-Ohio-1311, ¶ 10, quoting *Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, ¶ 29 (7th Dist.).

## IV. LEGAL ANALYSIS

{¶ 11} At the outset of our discussion, we note that appellant's June 13, 2015 motion to strike appellees' brief as "frivolous" is without merit and the same is hereby denied. Additionally, for purposes of clarity, we will first address assignments of error three through nine because they each challenge the trial court's dismissal of appellant's tort claims for failure to state a claim on which relief may be granted.

### A. Appellant's Third Assignment of Error

{¶ 12} In appellant's third assignment of error, appellant contends that the trial court erred when it dismissed his claim for bad-faith contract negotiations. We disagree.

{¶ 13} Although appellant contends that the trial court failed to rule on his bad-faith claim, the trial court's decision expressly states that "[n]o cause of action [in] Ohio exists for 'bad faith' negotiating in the sale of a private company." (Mar. 4, 2015 Decision and Entry, 4.) The trial court further stated that, "[f]or all the reasons set forth herein, the Plaintiff's complaint is **DISMISSED** in its entirety." (Emphasis sic.) (Mar. 4, 2015 Decision and Entry, 5.) Thus, the trial court ruled on, and dismissed, appellant's bad-faith claim. Furthermore, we agree with the trial court's ruling.

{¶ 14} There is no question that under Ohio law, an implied duty of good faith and fair dealing is imposed on parties to any contract. *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850 (1st Dist.). *See also Krukrubo v. Fifth Third Bank*, 10th Dist. No. 07AP-270, 2007-Ohio-7007. However, "an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim." *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 98; *Krukrubo* at ¶ 19. An examination of the complaint reveals that appellant has not pleaded a claim for breach of contract, nor do the facts alleged in the complaint support the existence of an enforceable agreement between the parties. Accordingly, the allegations of bad-faith negotiations fail to state a claim on which relief can be granted.

{¶ 15} For the foregoing reasons, appellant's third assignment of error is overruled.

## B.  Fourth Assignment of Error

{¶ 16} In his fourth assignment of error, appellant contends that the trial court erred when it dismissed his conversion claim.  We disagree.

{¶ 17} The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion, (2) defendant's conversion, by a wrongful act or disposition of plaintiff's property rights, and (3) damages.  *L & N Partnership v. Lakeside Forest Assn.*, 183 Ohio App.3d 125, 2009-Ohio-2987, ¶ 21 (10th Dist.), citing *Kramer Consulting, Inc. v. McCarthy*, 284 F.Supp.2d 917 (S.D.Ohio 2003).

{¶ 18}  Although appellant refers to himself as the "heir apparent" to Ricera and the "rightful new owner" of Ricera, the factual allegations in the complaint, if believed, merely establish that appellant obtained an opportunity to make an offer for the purchase of Ricera.  (Complaint, ¶ 32; Appellant's Brief, 37.)  The complaint does not permit an inference that appellant obtained any rights of ownership in Ricera or any right to possession of its property at the time of the sale to Main Market.  Thus, Main Market's alleged misuse of Ricera's assets following its purchase of the company could not have interfered with any property rights belonging to appellant.  Upon our de novo review of the complaint, we find that the trial court did not err when it dismissed appellant's conversion claim.

{¶ 19} For the foregoing reasons, appellant's fourth assignment of error is overruled.

## C.  Fifth and Sixth Assignments of Error

{¶ 20} In his fifth and sixth assignments of error, appellant argues that the trial court erred when it dismissed his claim of fraudulent misrepresentation as set forth in Count 1 of the complaint and his claim of fraudulent concealment as set forth in Count 2. We disagree.

{¶ 21} Civ.R.  9(B)  provides that "[i]n all averments of fraud * * *, the circumstances constituting fraud * * * shall be stated with particularity.  Malice, intent, knowledge,  and  other  condition  of  mind  of  a  person  may  be  averred  generally." "Typically, the requirement of particularity includes 'the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud.' "  *Carter-Jones Lumber Co. v. Denune*, 132 Ohio

App.3d 430, 433 (10th Dist.1999), quoting *Baker v. Conlan*, 66 Ohio App.3d 454, 458 (1st Dist.1990).   "The requirement that fraud be pleaded with particularity is based upon the principle that a complaint of fraud, frivolously or unjustifiably brought, carries greater potential for unjust consequences and thus a higher burden should be placed upon the plaintiff to support such general allegations with specific facts."  *Id.*

{¶ 22} The elements of a fraud claim are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to *the transaction at hand*, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

(Emphasis added.)   *Burr v. Bd. of Cty. Commrs. Stark Cty.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus.  *See also Isaac v. Alabanza Corp.*, 7th Dist. No. 05 JE 55, 2007-Ohio-1396, ¶ 21, citing *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

{¶ 23} Our review of the allegations of the complaint reveals that appellant has not alleged a completed "transaction" on which a claim of fraud may be founded.   A transaction is defined as "[t]he act or an instance of conducting business or other dealings. * * * Something performed or carried out; a business agreement or exchange." *Black's Law Dictionary* 1503 (7th Ed.1999).  The word "transact" is defined as "[t]o carry on or conduct (negotiations, business, etc.) to a conclusion."  *Black's Law Dictionary* 1503 (7th Ed.1999).  Consistent with this definition, R.C. 1345.01(A) defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible."

{¶ 24} The complaint does not allege the existence of a written agreement regarding either the sale of Ricera or the process by which bids were to be submitted and evaluated.  Nor do the facts alleged in the complaint permit an inference that the parties reached an oral agreement regarding either the sale of Ricera or the process by which bids were to be submitted and evaluated.  Also absent from the complaint is an allegation that the parties orally or impliedly agreed that appellant would have exclusive right to submit

an offer to purchase the company. Furthermore, the two LOIs submitted by appellant are incomplete and unsigned.

{¶ 25} The only agreement executed by the parties in this case is the CDA permitting appellant access to confidential financial information for the purpose of formulating his LOI. The CDA provides, in relevant part: "Ricera desires to disclose Confidential Information to * * * you for the limited purpose of allowing the parties to evaluate the possibility of entering into a mutually beneficial business relationship." (Exhibit II.) The complaint alleges that Smith-Hoke subsequently participated in a telephone conversation with appellant wherein she gave her opinion regarding the characteristics of a competitive bid. The complaint also describes a follow-up conversation and e-mail correspondence at which time Smith-Hoke informed appellant that she considered his first LOI to be non-responsive and non-competitive. Construing the allegations of the complaint in appellant's favor, it is reasonable to infer that appellant merely acquired an opportunity to enter into a contract for the purchase of Ricera. This being the case, the complaint does not allege a completed "transaction" between appellant and appellees on which a claim of fraud can be founded.

{¶ 26} Furthermore, even if we were to conclude that appellant's discussions with Smith-Hoke and his unsigned and incomplete LOIs can be considered a transaction for purposes of common-law fraud, appellant has pleaded no facts which would support his assertion that Smith-Hoke "owed [him] a duty to give him sound advice as to what constituted a competitive bid offer in the absence of an open bidding process." (Complaint, ¶ 85). A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *In re Termination of Employment of Pratt*, 40 Ohio St.2d 107 (1974). Appellant has not alleged that a fiduciary relationship existed between the parties, nor do the facts alleged in the complaint support the existence of such a relationship. The complaint establishes only that appellant's relationship with Ricera was that of a prospective bidder in the private sale of the company. *See Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 30 ("Ordinarily, a business transaction where the parties deal at arm's length does not create a fiduciary relationship."). Appellant has cited no Ohio case law or

statutory law, nor has this court's research revealed any, extending those duties to a prospective bidder in the private sale of a privately held company.

1.  Fraudulent Misrepresentation

{¶ 27} Appellant's claim of fraudulent misrepresentation is based on the following allegations in the complaint:

> 35) On Monday, October 20, 2014, a five-way telephone call was orchestrated and conducted by Smith-Hoke. The participants included Calvillo, [appellant], Smith-Hoke, Dorothie L. Okelson, and Dennis M. Potter;
>
> 36) [Appellant] summarized the call by stating that if the real estate issue is resolved by [appellant], then [appellant] should be the new owner of [Ricera];
>
> 37) Smith-Hoke agreed that nothing else really mattered to the seller if the real estate liability was transferred to [appellant];
>
> 38) Smith-Hoke stated that due to the "fire sale" nature of the business, the owners did not realistically anticipate multiples or significant monetary bids.

According to appellant, these factual allegations give rise to an inference that Smith-Hoke misrepresented material facts and fraudulently induced appellant into submitting a non-competitive bid.  We disagree.

{¶ 28} As a general rule, the misrepresentations relied on cannot be of future intent, judgment, or opinion.  *See Reyes v. McCabe*, 10th Dist. No. 96APE05-690 (Mar. 31, 1997); *Williams v. Edwards*, 129 Ohio App.3d 116, 124 (1st Dist.1998).  "It is clear in Ohio, that fraud cannot be predicated upon promises or representations relating to future actions or conduct."  *Brevoort v. Internatl. Financial Resources, Inc.*, 10th Dist. No. 93AP-977 (Dec. 30, 1993).  To constitute actionable "fraud," the misrepresentation must be of a fact existing when the misrepresentation was made or one which had previously existed.  *Gouge v. Bax Global, Inc.*, 252 F.Supp.2d 509, 515 (N.D.Ohio 2003), citing *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 526, 2002-Ohio-5194, citing *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742 (8th Dist.1992).  Representations as to what will take place in the future are regarded as predictions and not fraudulent.  *Id.*  "[T]he rule barring fraud claims on the basis of statements of opinion

is that opinions cannot, as a matter of law, be reasonably relied upon."  *Reyes*, citing *J.B. Colt Co. v. Wasson*, 15 Ohio App. 484 (9th Dist.1922).  *See also Brevoort.*

{¶ 29} The above-cited alleged material misrepresentations on which appellant claims reliance do not constitute statements of past or present fact.  Rather, Smith-Hoke's alleged statement that "if the real estate issue is resolved by [appellant], then [appellant] *should* be the new owner of [Ricera]" is nothing more than a qualified prediction regarding appellant's chances of submitting a winning bid. (Emphasis added.) (Complaint, ¶ 36.)  Because the complaint acknowledges that future approval of Ricera's Board of Directors is required before any offer of sale may be accepted, Smith-Hoke's assertion that "nothing else *really* mattered" to RIH does little to bolster appellant's claim that Smith-Hoke was misrepresenting a present or past fact, rather than referring to a future event. (Emphasis added.) (Complaint, ¶ 37.)  Nor does the complaint permit an inference of falsity.

{¶ 30} Similarly, Smith-Hoke's alleged statement that "the owners did not realistically anticipate multiples or significant monetary bids" is not a statement of past or present fact.  (Complaint, ¶ 38.)  The statement provides no information regarding the minimum acceptable bid, nor does it suggest a range of monetary bids that would be considered by the Board.  Nevertheless, appellant claims that in reasonable reliance on Smith-Hoke's representations, he submitted an LOI with a proposed purchase price of "one dollar."

{¶ 31} "[E]stimates are not representations capable of constituting fraud."  *Micrel, Inc. v. TRW, Inc.*, N.D.Ohio No. 1:02 CV 2539 (May 17, 2005), citing *Gouge* at 516.  Rather, "[t]hey are predictions of the future which are, by definition, opinions or rough calculations.  Thus, as a matter of law, they are not representations of fact."  *Id.*  "Nor, as a matter of law, can they be reasonably relied upon in a claim alleging fraudulent inducement."  *Id.*, citing *J.B. Colt Co.* at 487.  It is simply not objectively reasonable, as a matter of law, for appellant to submit a "one dollar" bid in reliance on Smith-Hoke's representation that "the owners did not realistically anticipate multiples or significant monetary bids." (Complaint, ¶ 38.)

{¶ 32} Based on our de novo review of the complaint, we find that appellant has failed to plead facts which permit an inference that he reasonably relied on an alleged

misrepresentation of fact by Smith-Hoke.  Appellant's claim of justifiable reliance fails because, as noted, Smith-Hoke's representations amounted to predictions of future events, or qualified estimates and opinions, which cannot justifiably be relied on as a matter of law.  *Gouge* at 518, citing *Tibbs v. Natl. Homes Constr. Corp.*, 52 Ohio App.2d 281, 286 (12th Dist.1977); *J.B. Colt Co.* at 487.

### 2. Fraudulent Concealment

{¶ 33} Appellant's claim of fraudulent concealment is based on Smith-Hoke's failure to disclose to him that Croley's company represented a competing bidder. Appellees argue that the facts alleged in the complaint do not give rise to a duty on the part of Smith-Hoke to inform appellant of the identity of competing bidders.  We agree.

{¶ 34} Under Ohio law, "a duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence."  *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 384 (10th Dist.2000).  Thus, "[w]hile a strict fiduciary relationship is not required in order to trigger the duty to speak, that duty does not arise in the course of an ordinary arms-length business transaction."  *Nelson v. Am. Power & Light*, S.D.Ohio No. 2:08-cv-549 (Aug. 12, 2010).  As noted above, the facts alleged in the complaint do not permit an inference that Smith-Hoke had a duty to provide appellant with sound advice as to what constituted a competitive bid.

{¶ 35} Nevertheless, with regard to the concealment claim, the complaint alleges that Smith-Hoke owed appellant a legal duty to "inform him if any bidder held an unfair bidding advantage over [him]."  (Complaint, ¶ 108.)  Appellant also claims that Smith-Hoke had a legal duty to inform him that he was bidding against a "corporate insider." (Complaint, ¶ 105.)  Appellant has cited no legal authority to support his claim that Smith-Hoke, as an officer of Ricera, owed him a duty, as a prospective bidder for the purchase of the company, to disclose the identity of competing bidders.  Appellant has not alleged that Ricera or RIH issued any publication regarding the bidding process, nor has appellant alleged facts which would require the imposition of statutory or regulatory requirements on RIH in connection with the sale of the company.

{¶ 36} Furthermore, to the extent that appellant alleges that Smith-Hoke concealed the fact that Croley would have "unfettered access to [appellant's] bid submissions," appellant's complaint acknowledges that appellant had prior knowledge

that Ricera had hired Croley as its chief restructuring officer and that, in this capacity, Croley had access to appellant's LOI. (Complaint, ¶ 101.) Thus, there can be no concealment claim with respect to Croley's access to appellant's LOI in the absence of a legal duty on the part of Smith-Hoke to disclose the identity of competing bidders.

{¶ 37} Based on the foregoing, we find that appellant's complaint does not state a claim on which relief may be granted either in fraudulent misrepresentation or fraudulent concealment. Accordingly, we hold that the trial court did not err when it dismissed appellant's fraud claims, pursuant to Civ.R. 12(B)(6), for failure to state a claim on which relief may be granted.

{¶ 38} For the foregoing reasons, appellant's fifth and sixth assignments of error are overruled.

### D. Eighth Assignment of Error

{¶ 39} In his eighth assignment of error, appellant contends that the trial court erred when it dismissed his claim of tortious interference with contract negotiations. We disagree.

{¶ 40} "The Second Restatement of Torts defines the related claims of intentional interference with business relations to encompass 'one who intentionally and improperly interferes with the performance of a contract' or 'another's prospective contractual relation.' " *Majcen & Assoc. v. The Phoenix Assoc., Inc.*, 8th Dist. No. 76454 (2001), citing 4 Restatement of the Law 2d, Torts, Sections 766, 766A, and 766B (1977). In *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), the Supreme Court of Ohio adopted the Restatement analysis and recognized that Ohio has a cause of action for tortious interference.[3] In *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14 (1995), the Supreme Court recognized the related cause of action for intentional interference with *prospective* business relations. *See also Gray-Jones v. Jones*, 137 Ohio App.3d 93, 102 (10th Dist.2000); *Pasqualetti v. Kia Motors Am., Inc.*, 663 F.Supp.2d 586 (N.D.Ohio 2009), fn. 8.

---

[3] 4 Restatement of the Law 2d, Torts, Section 766 defines "Intentional Interference with Performance of Contracts by Third Person" as: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing *the third person* not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." (Emphasis added.)

{¶ 41} 4 Restatement of the Law 2d, Torts, Section 766B, at 20 (1979), concerning intentional interference with prospective contractual relations, provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing *a third person* not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

(Emphasis added.)

{¶ 42} Under Ohio law, an action for tortious interference may only lie against an outside party to the contract or prospective business relationship. *See, e.g.*, *Pasqualetti* at 602 (franchisor does not act as a "third party" or "outsider" when approving or denying a prospective franchisee's application). The rationale for this limitation is the recognition that "[a] party cannot, obviously, interfere with its own contract because that would substitute tort law for contract law." *Id.* Thus, " '[t]he tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with.' " *Id.*, quoting *Genet Co. v. Annheuser-Busch, Inc.*, 498 So.2d 683, 684 (Fla.Dist.Ct.App.3d Dist.1986). *See also Hadi v. State Farm Ins. Cos.*, S.D.Ohio No. 2:07-cv-60 (Nov. 12, 2008) (a claim for tortious interference requires intentional acts by a third party that interfere with the employment relationship between the plaintiff and his employer); *Collins v. Allen*, S.D.Ohio No. 1:04-cv-572 (Mar. 16, 2005) ("In the absence of any allegation that a third party initiated the end of its relationship with [plaintiff], no claim for tortious interference lies."); *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F.Supp.2d 912, 919 (N.D.Ohio 2011) (a claim of intentional interference requires purposeful interference with a third-party business relation); *Hatton v. Interim Health Care of Columbus, Inc.*, 10th Dist. No. 06AP-828, 2007-Ohio-1418 (tortious interference with a business relationship requires that a defendant interfere with the relationship of the plaintiff and a third party); *Geisy v. Kforce, Inc.*, S.D.Ohio No. 2:05-cv-366 (Oct. 26, 2005) (it is only "strangers to the business relationship," not the

employees of a party to the relationship acting within their scope of employment, that may be held liable for tortious interference); *AAA Installers v. Sears Holdings Corp.*, 764 F.Supp.2d 931, 942 (in order for a person to interfere, the person must not be party to the business relation at issue).

{¶ 43} In this instance, appellant alleges that Smith-Hoke interfered with his contract negotiations with Ricera when she wrongly accused appellant and Calvillo of conspiring with Derrington to circumvent the bidding process.[4] Appellant also alleges that Smith-Hoke, acting as Ricera's chairman of the board, and Croley, acting as Ricera's chief restructuring officer, conspired to improperly deprive appellant of his opportunity to acquire Ricera.[5]

{¶ 44} As we have concluded in connection with appellant's third, fourth, fifth, and sixth assignments of error, the facts alleged in the complaint are insufficient to state a claim against appellees sounding in tort. Moreover, appellees are not outsiders to the business opportunity at issue. The complaint alleges that Smith-Hoke engaged in the specified wrongful conduct in her capacity as chairman of the board. The complaint also states that Croley obtained access to appellant's LOI while performing his duties as chief restructuring officer of Ricera. Consequently, as parties to the business opportunity at issue, appellees cannot be subject to liability to appellant for intentional interference with appellant's prospective contractual relation. *Pasqualetti. See also* 4 Restatement of the Law 2d, Torts, Section 766B, at 20, Comment c (1979).[6]

{¶ 45} For the foregoing reasons, appellant's eighth assignment of error is overruled.

---

[4] The complaint provides at ¶ 29: "Smith-Hoke stated to Calvillo and [appellant] that she terminated Derrington * * * for providing financial information to Calvillo and [appellant] as well as for agreeing to remain on in his same capacity as pharmaceutical CEO for [appellant's] new company." There is no allegation in the complaint that Smith-Hoke made the accusation in the presence of a third party.

[5] The complaint alleges alternatively that: (1) Croley raised Main Market's bid price above appellant's after seeing appellant's second LOI, and (2) the Board selected Main Market's bid even though appellant's second LOI contained a higher bid price.

[6] *See also* Annotation, 71 A.L.R.5th 491, Section 11 (1999) (collecting cases from other jurisdictions holding that "an action for tortious interference with a prospective contract or economic advantage involving a sale of a business could not be maintained against a party or an agent of a party to the contract or business relationship in question").

### E.  Seventh Assignment of Error

{¶ 46} In his seventh assignment of error, appellant claims that the trial court erred when it dismissed his claim of "Intentional Tort—Collusion/Bid Rigging." The trial court determined that no such claim existed under Ohio law.

{¶ 47} Appellant argues that Count 3 of his complaint states a claim for civil conspiracy and that the trial court should have recognized it. A civil conspiracy is " ' "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." ' " *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998), quoting *Kenty* at 419, quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). A claim of civil conspiracy must be premised on an underlying wrongful act. *Id.* See also *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 42 (10th Dist.). Otherwise, the claim must fail. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, ¶ 40 (10th Dist. 2009) ("A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy."). See also *Orbit Electronics, Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App.3d 301, 2006-Ohio-2317, ¶ 36 (8th Dist.); *Gosden v. Louis*, 116 Ohio App.3d 195, 220 (9th Dist.1996).

{¶ 48} Count 3 of the complaint, identified as "Intentional Tort—Collusion/Bid Rigging," alleges that Smith-Hoke and Croley maliciously combined their tortious conduct as set forth in the complaint in order to deprive appellant of his opportunity to purchase Ricera. Because we have found that appellant's complaint fails to state a claim in tort, his civil conspiracy claim must also fail. Accordingly, any error on the part of the trial court in failing to recognize appellant's claim for civil conspiracy is harmless error.

{¶ 49} For the foregoing reasons, appellant's seventh assignment of error is overruled.

### F.  Ninth Assignment of Error

{¶ 50} In his ninth assignment of error, appellant contends that the trial court erred when it dismissed his claim for unjust enrichment/constructive trust. We disagree.

{¶ 51} The complaint seeks a court order imposing a constructive trust over the assets conveyed to Main Market based on a claim of unjust enrichment. The elements of a cause of action for unjust enrichment are: (1) a benefit conferred by the plaintiff on the

defendant, (2) knowledge of the benefit by the defendant, and (3) retention of the benefit by the defendant in circumstances where it would be unjust to do so. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 52} A constructive trust is an equitable remedy available when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest. *Ferguson v. Owens*, 9 Ohio St.3d 223, 225 (1984), citing 76 American Jurisprudence 2d, Trusts, Section 221, at 446 (1975). "A constructive trust is, in the main, an appropriate remedy against unjust enrichment." *Id.* at 226.

{¶ 53} "Ohio courts have described a constructive trust as 'a relationship associated with property subjecting the title holder to an equitable duty to convey it to another because otherwise the title holder would be unjustly enriched.' " *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 15 (10th Dist.), quoting *Union S. & L. Assn. v. McDonough,* 101 Ohio App.3d 273, 276 (12th Dist.1995). By imposing a constructive trust, a court orders a person who owns the legal title to property to hold or use the property for the benefit of another or to convey the property to another to avoid unjust enrichment. *Id.*, citing *Everhard v. Morrow*, 8th Dist. No. 75415 (Dec. 2, 1999).

{¶ 54} Appellant's complaint does not allege that appellant conferred a benefit on appellees. Rather, appellant's claims in this case are based on appellant's loss of a prospective contract to purchase Ricera. To the extent that appellant alleges that appellees unjustly benefitted from the purchase of Ricera by Main Market, such benefit was conferred on appellees by RIH, the former owner of Ricera, and/or Main Market, not appellant. Accordingly, appellant has failed to allege facts sufficient to state a claim against appellees either for unjust enrichment or the imposition of a constructive trust.

{¶ 55} For the foregoing reasons, appellant's ninth assignment of error is overruled. For these same reasons, we hereby deny appellant's June 23, 2015 "motion for a magistrate's hearing to determine whether a transfer of assets has occurred."

### G. First Assignment of Error

{¶ 56} In appellant's first assignment of error, appellant contends that the trial court erred when it determined that appellant did not have standing to mount a direct challenge to the sale of Ricera to Main Market. We disagree.

{¶ 57} To have standing, a plaintiff must have a personal stake in the outcome of the controversy and have suffered some concrete injury that is capable of resolution by the court. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986). It is not sufficient for the individual to have a general interest in the subject matter of the action. *Tate v. Garfield Hts.*, 8th Dist. No. 99099, 2013-Ohio-2204, ¶ 12. The plaintiff must be the party who will be directly benefitted or injured by the outcome of the action. *Shealy v. Campbell*, 20 Ohio St.3d 23, 24 (1985).

{¶ 58} Appellant's argument in support of his first assignment of error is that he has standing to challenge the sale of Ricera as an unsuccessful bidder in a "public sale" or "auction." We disagree.

{¶ 59} Although "public sale" is not a term defined in the Ohio Revised Code, case law has adopted the following definition of a public sale:

> Webster's Third International New Dictionary defines a public sale to be "an auction." Black's Law Dictionary, Seventh Edition, defines a public sale as "[a] sale made after public notice, as in an auction or sheriff's sale."

*Daimler/Chrysler Truck Fin. v. Kimball*, 2d Dist. No. 2007-CA-07, 2007-Ohio-6678, ¶ 18.

{¶ 60} In *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, ¶ 30, the Supreme Court defined an "auction" as follows:

> The word "auction" has a commonly recognized plain meaning. Both *Webster's Third New International Dictionary* 142 (1993) and *Black's Law Dictionary* 149 (9th Ed.2009) define "auction" as "[a] public sale of property to the highest bidder."

{¶ 61} The complaint states that appellant learned of the possible sale of Ricera from reading internet news articles regarding the "potential closing of [Ricera] with the loss of 199 jobs if a suitable buyer could not be found in a hurry" and does not allege public notice or any other indicia of a public sale or auction. (Complaint, ¶ 18.) *See* R.C. 1318.01-1318.99 (pertaining to auctions) and 1309.613 ("Contents and form of notification before disposition of collateral"). Although appellant's complaint alleges that RIH accepted offers from more than one suitor, the facts alleged in the complaint do not

support his claim that Main Market acquired ownership of Ricera from RIH by way of "public sale" or "auction."  Accordingly, if taken as true, the allegations in the complaint do not permit an inference that Ricera was offered at a public sale or auction.  Rather, the only conclusion to be drawn from the facts alleged in the complaint is that Main Market acquired Ricera in a private sale.

{¶ 62} For the foregoing reasons, appellant's first assignment of error is overruled.

### H.  Second Assignment of Error

{¶ 63} In his second assignment of error, appellant contends that the trial court deprived him of his right to a jury trial when it dismissed his complaint.  We disagree.

{¶ 64} "[A]ny right to trial by jury is rendered moot by a dismissal under Civ.R. 12(B)(6)."  *Justice v. Nationwide Ins. Co.*, 10th Dist. No. 98AP-1083 (May 27, 1999), citing *Sturgill v. Village of Lockbourne*, 10th Dist No. 97APE01-139 (Oct. 28, 1997), citing *Winkle v. Southdown, Inc.*, 2d Dist. No. 92-CA-107 (Sept. 3, 1993).  As set forth above, this court has conducted a de novo review of the trial court's ruling and has determined that appellant's complaint fails to state a claim on which relief may be granted.  In light of this determination, appellant's right to a jury trial is rendered moot.  *Id.*; *Sturgill*; *Winkle*. Accordingly, appellant's second assignment of error is overruled.

## V.  CONCLUSION

{¶ 65} Having overruled appellant's nine assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.  Additionally, for the reasons set forth herein, appellant's June 13, 2015 motion to strike appellees' brief and appellant's June 23, 2015 motion for a magistrate's hearing are denied.

*Motions denied;*
*judgment affirmed.*

BROWN, P.J., and HORTON, J., concur.

————————————————