[Cite as *Natl. Contracting Group, Ltd. v. P&S Hotel Group, Ltd.*, 2021-Ohio-2940.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| National Contracting Group, Ltd., | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 20AP-144 |
| v. | : | (C.P.C. No. 14CV-11760) |
| P&S Hotel Group, Ltd., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 26, 2021

**On brief:** *Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A.*, and *Aaron C. Firstenberger*, for appellee.

**On brief:** *Sanjay K. Bhatt*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, P&S Hotel Group, Ltd., appeals a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, National Contracting Group, Ltd. For the following reasons, we affirm.

{¶ 2} National Contracting Group was a commercial construction contractor based in Delaware County, Ohio. P&S is a limited liability company that owns a hotel in Reynoldsburg, Ohio. In 2010, P&S contracted with National Contracting Group to convert its hotel from a Country Inn & Suites brand hotel to a Holiday Inn Express brand hotel (the "Holiday Inn project"). National Contracting Group completed the Holiday Inn project in late 2010 or early 2011.

{¶ 3} On June 24, 2011, representatives for P&S and National Contracting Group met and agreed that P&S could satisfy its outstanding financial obligation for the Holiday Inn project by paying $254,915.22 to National Contracting Group. National Contracting Group sent P&S an invoice for that amount.

{¶ 4} The same individuals who are the members of P&S are also the members of another limited liability company, PVS, Ltd. PVS owns a hotel near Polaris Fashion Place in Columbus, Ohio. In 2012, PVS hired National Contracting Group to convert its hotel from a Wingate by Wynham brand hotel to a Four Points by Sheraton brand hotel (the "Four Points project").

{¶ 5} On May 23, 2012, PVS caused its bank to wire $100,000 to National Contracting Group to be applied to the amount PVS owed National Contracting Group for the Four Points project. However, National Contracting Group applied the $100,000 payment from PVS to the outstanding balance P&S owed to National Contracting Group for the Holiday Inn project.

{¶ 6} Later in 2012, National Contracting Group asked the Delaware County Court of Common Pleas to appoint a receiver to wind down its affairs. On December 12, 2012, pursuant to R.C. 1705.44, the Delaware County Court of Common Pleas appointed Martin Management Services, Inc. ("Receiver") as the receiver for the business and assets of National Contracting Group.

{¶ 7} When the Receiver examined National Contracting Group's records, it discovered the $100,000 wire transfer from PVS that National Contracting Group had applied to P&S' account. In January 2013, the Receiver instructed National Contracting Group's bookkeeper to reverse the $100,000 credit applied to P&S' account and instead apply that credit to the outstanding balance due from PVS to National Contracting Group on the Four Points project. The bookkeeper complied with these instructions.

{¶ 8} After performing this bookkeeping modification, the amount due from P&S to National Contracting Group for the Holiday Inn project was $183,915.22. On January 11, 2013, the bookkeeper, on behalf of the Receiver, sent an invoice to P&S showing an outstanding balance in the amount of $183,915.22 due to National Contracting Group for the Holiday Inn project. P&S received the invoice and did not question or object to the

amount owed, but made no further payments to National Contracting Group or the Receiver.

{¶ 9}   The Receiver demanded payment in the amount of $183,915.22 from P&S in letters dated April 2 and 25, 2013.  P&S did not respond to either letter.

{¶ 10}  On November 14, 2014, National Contracting Group filed a complaint against P&S seeking $183,915.22 in damages.  P&S answered and asserted a counterclaim, in which P&S claimed that National Contracting Group breached the parties' contract by not paying for tile and carpet installed during the Holiday Inn project.

{¶ 11}  The parties tried their case before a magistrate.  In a decision dated March 9, 2018, the magistrate rendered findings of fact consistent with the facts set out above.  The magistrate found in National Contracting Group's favor on its claim for breach of contract. With regard to the counterclaim, the magistrate determined that P&S had proven a breach of contract related to the tile and/or tile installation National Contracting Group did not pay for, but P&S did not prove a breach relating to the carpet.  Because P&S paid $63,781.09 for tile and/or tile installation, the magistrate deducted that amount from the $183,915.22 P&S owed National Contracting Group, resulting in a damages award of $118,134.13, plus interest.

{¶ 12}  P&S objected to the magistrate's decision.  In a judgment issued February 18, 2020, the trial court overruled P&S' objections and adopted the magistrate's decision.

{¶ 13}  P&S now appeals the February 18, 2020 judgment, and it assigns the following errors:

> [1.]  The trial court erred in finding that the Receiver had lawful authority to reverse payment applications of $100,000 (wire transfer) and $10,000 (check) made to [National Contracting Group] by another entity, PVS, Ltd.[,] on behalf of P&S Hotel.

> [2.]  The trial court erred in failing to award damages to P&S Hotel upon finding that [National Contracting Group] had breached the parties' contract by its failure to pay Mohawk Carpet all of the outstanding invoices.

{¶ 14}  By its first assignment of error, P&S challenges the Receiver's authority to reverse payments originally applied to P&S' account and instead apply those payments to the amount due for the Four Points project.  This court, however, cannot address this collateral attack on the Receiver's authority.

{¶ 15} Initially, we may summarily deal with the $10,000 payment. Although P&S claims that two payments are at issue in this assignment of error, the evidence shows that the Receiver only reversed one payment: the $100,000 wire transfer. PVS paid National Contracting Group $10,000 via a check dated June 15, 2012, and National Contracting Group applied the $10,000 to the amount P&S owed for the Holiday Inn project. However, unlike the $100,000 credit stemming from the wire transfer, the Receiver did not reverse the credit arising from the $10,000 check. Thus, the $10,000 payment is irrelevant to this assignment of error.

{¶ 16} We are left, then, with the question of whether the Receiver's authority encompassed the ability to transfer the $100,000 credit from P&S' account to PVS' account. The Receiver asserts that it had the necessary authority, pointing to the order appointing it Receiver. In relevant part, that order states:

> 4. The Receiver is authorized to enter, take possession of, manage, operate, protect, and have complete and exclusive charge and control of all of the assets, business and operations of [National Contracting Group] including, without limitation, all * * * accounts * * * (collectively the "Company Assets").
>
> * * *
>
> 6. The Receiver is authorized to do all things and to take all actions, in his judgment, that are necessary or appropriate to preserve, protect and/or maintain the Company Assets * * *.

(Ex. A, Compl.)

{¶ 17} R.C. 2735.04(B) delineates the powers a trial court may grant a receiver. This list includes the power to "[g]enerally do any other acts that the court authorizes." R.C. 2735.04(B)(8). Consequently, R.C. 2735.04(B) enables "the trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate." *State ex rel. Celebreeze v. Gibbs*, 60 Ohio St.3d 69, 67-68 (1991).

{¶ 18} Because the appointing court defines the powers of the receiver, it controls the receiver's actions. *Dispatch Printing Co. v. Recovery L.P.*, 10th Dist. No. 14AP-473, 2015-Ohio-381, ¶ 25. Ultimately, the receiver is a trustee or ministerial officer of the appointing court, subject to that court's order and direction. *Id.* at ¶ 24-25. Therefore, a receiver's authority cannot be collaterally attacked in another court. *Grant v. A.B. Leach &*

*Co.*, 280 U.S. 351, 360 (1930); *Young v. FirstMerit Bank, NA*, N.D.Ohio No. 1:06CV1486 (Feb. 1, 2007); *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 345 (2d Dist.1992).

{¶ 19} Here, pursuant to the court order, the Receiver possessed the power to manage National Contracting Group's accounts, and the Receiver purportedly exercised that power by reversing a credit on one account and applying it to a different account. P&S knew about the Receiver's actions. In January 2013, P&S received a revised invoice indicating it owed National Contracting Group $183,915.22 for the Holiday Inn project. National Contracting Group twice demanded payment of $183,915.22 in April 2013. Darshan Shah, a P&S partner, testified that he understood after receiving an April 2013 demand for payment that the Receiver had reversed the credit for the $100,000 wire transfer, thus increasing the amount P&S owed to $183,915.22.

{¶ 20} At that time, P&S' recourse was to address the Receiver's alleged overreach with the Delaware County Court of Common Pleas, the appointing court. As the appointing court, the Delaware County Court of Common Pleas could decide whether the Receiver exceeded the bounds of the authority that that court had granted it. P&S, however, did not seek a ruling from the appointing court. P&S did not challenge the Receiver's authority until the current litigation in a court that did not appoint the Receiver.

{¶ 21} We cannot entertain P&S' argument because it attacks the Receiver's authority collaterally rather than on a direct appeal from the appointing court. Therefore, we cannot render the relief P&S seeks; namely, a ruling that the Receiver unlawfully exceeded his authority by reversing the $100,000 credit originally applied to P&S' account and applying that credit to PVS' account. Accordingly, we overrule P&S' first assignment of error.

{¶ 22} By its second assignment of error, P&S argues that the trial court erred in failing to award it damages upon finding that National Contracting Group breached the parties' contract by not paying Mohawk Carpet Distribution, Inc. for the carpet installed during the Holiday Inn project. We disagree.

{¶ 23}  At trial, P&S presented evidence that National Contracting Group ordered carpet for the Holiday Inn project from Mohawk Carpet. Although National Contracting Group paid for some carpet, it did not pay the entire bill as required by the Holiday Inn

project contract. On May 13, 2011, Mohawk Carpet filed an affidavit for a mechanic's lien in the amount of $45,231.73 against P&S' property. On September 16, 2013, Mohawk Carpet filed a release of its lien. According to P&S, it paid $17,668 to obtain a release of the lien.

{¶ 24} To prove a breach of contract, a party must establish the existence and terms of a contract, its performance of the contract, the other party's breach of the contract, and damages or loss. *Delta Fuels, Inc. v. Ohio Dept. of Transp.*, 10th Dist. No. 15AP-28, 2015-Ohio-5545, ¶ 30. With regard to the damages element, the nonbreaching party must establish the fact of damage and, absent a claim for nominal damages, sustain its burden of proof as to amount of that damage. *Id.* As a general rule, a party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount ascertainable with reasonable certainty. *Father's House Internatl., Inc. v. Kurguz*, 10th Dist. No. 15AP-1046, 2016-Ohio-5945, ¶ 39.

{¶ 25} Here, the trial court found that National Contracting Group did not breach the parties' contract because P&S failed to produce credible evidence regarding the amount of damages it sustained. Although Darshan Shah, a P&S partner, testified that P&S paid $17,668 to secure a release of the mechanic's lien, P&S presented no documentary evidence to corroborate this testimony. The trial court found Shah's testimony, alone, unconvincing proof of the amount of P&S' monetary loss. P&S now contests that conclusion.

{¶ 26} We review P&S' challenge under the manifest weight of the evidence standard. " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." ' " (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Thus, in reviewing a judgment under the manifest weight standard, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *Id.* at ¶ 20. In conducting a manifest weight review, an appellate court must make every reasonable

presumption in favor of the trial court's judgment and findings of fact. *Id.* at ¶ 21. If the evidence is susceptible to more than one construction, an appellate court must interpret it in the manner most consistent with the judgment. *Id.*

{¶ 27} While we do not doubt that Mohawk Carpet received compensation in order to release the mechanic's lien, we agree with the trial court that Shah's testimony is inadequate evidence of the amount that P&S paid. Specifically, Shah testified, "From what I remember, [P&S paid] around $17,668." (June 23, 2016 Tr. at 148-49.) Given the inexactitude of this testimony, we lack confidence in the accuracy of the information imparted. Additionally, we fail to see why P&S could not adduce a record of the payment. When asked why he offered no documentation to support his testimony, Shah stated, "I believe it was part of when it was refinanced during that time it was paid." *Id.* at 175. We can make no sense of this answer. We thus conclude that the trial court did not err in finding no breach of contract arising out of the failure to pay Mohawk Carpet. Accordingly, we overrule P&S' second assignment of error.

{¶ 28} For the foregoing reasons, we overrule P&S' first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and MENTEL, JJ., concur.

————————————