[Cite as *Innovative Architectural Planners, Inc. v. Ohio Dept. of Adm. Servs.*, 2024-Ohio-824.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Innovative Architectural Planners, Inc., d/b/a IAP Government Services Group, | : | |
| | : | |
| Plaintiff-Appellant, | : | No. 23AP-116 |
| | | (Ct. of Cl. No. 2021-00354JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio Department of Administrative Services and the Ohio Facilities Construction Commission, | : | |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 7, 2024

**On brief:** *Porter, Wright, Morris & Arthur, LLP, Scott E. North, L. Bradfield Hughes*, and *Spencer C. Meador*, for appellant. **Argued:** *Scott E. North.*

**On brief:** *Dave Yost*, Attorney General, *Randall W. Knutti, James E. Rook*, and *Jerry K. Kasai*, for appellees. **Argued:** *Randall W. Knutti.*

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Innovative Architectural Planners, Inc. ("IAP"), appeals a judgment of the Court of Claims of Ohio that granted summary judgment to defendants-appellees, the Ohio Department of Administrative Services ("DAS") and the Ohio Facilities Construction Commission ("OFCC"). For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

**I.  Facts and Procedural History**

{¶ 2}  In 2015, after issuing a Request for Competitive Sealed Proposals, DAS awarded a third-party administrator contract ("TPA contract") to IAP.  Under the TPA contract, state agencies could engage IAP to serve as a third-party administrator for certain agency projects.  As the TPA contract explained, "[t]he [third-party administrator] serves as an intermediary between the agencies and the Contractors [hired to] perform[ ] the work. The role of the [third-party administrator] is to: receive task orders from using agencies, set up scope meetings with all interested parties, bid and award contracts to Contractors and oversee the scope of work, costs and schedules of all awarded projects." (Pl.'s Memo in Opp. to Defs.' Mot. for Summ. Jgmt., Ex. A.)  Typical projects for which IAP could act as a third-party administrator included minor construction, interior and exterior finishes, mechanicals, plumbing, electrical, fire safety, elevators, HVAC, and roofing.

{¶ 3}  The TPA contract provided that it was available for the use of specific, named agencies, including the Ohio Department of Natural Resources, the Ohio Department of Rehabilitation and Correction, and the Ohio Department of Agriculture.  According to the TPA contract, "[t]he agency is eligible to make purchases of the contracted services in any amount and at any time as determined by the agency." (Pl.'s Memo in Opp. to Defs.' Mot. for Summ. Jgmt., Ex. E at 1.)

{¶ 4}  A state agency could engage IAP's services by submitting a task order to IAP. Upon receiving the task order, IAP would meet with the agency to determine the scope of work the agency needed.  IAP would then solicit bids from contractors for the agency's project, review the bids, and negotiate with the contractors.  Once the agency selected a contractor, IAP would award the project to the contractor.  At that point, the agency would issue a purchase order to IAP.  According to Jennifer Schneider, IAP's senior vice president, a purchase order constituted the contract between IAP and the agency as to the agency's project.  After receiving the purchase order, IAP would oversee the contractor's work on the project and pay the contractor the amount due.

{¶ 5}  Pursuant to the TPA contract, the agency receiving IAP's third-party administrator services paid IAP directly for those services.  IAP could "not be paid, nor [could] the agency be invoiced, for task orders that [did] not result in active projects or for projects in which the Contractor [was] not paid for work completed." (Pl.'s Memo in Opp.

to Defs.' Mot. for Summ. Jgmt., Ex. A at 21.) IAP interpreted this provision to mean that it could not bill the agency for its services until it received a purchase order from the agency. Under the TPA contract, IAP was entitled to a payment of 8.5 percent of the total project cost.

{¶ 6} The original term of the TPA contract was from May 30, 2015 to December 31, 2017. However, the parties renewed the TPA contract for an additional two-year term, which extended the term of the contract to December 31, 2019. As the expiration of the TPA contract approached, the parties agreed to postpone the termination of the contract until March 31, 2020, but only to allow the completion of specific, ongoing projects.

{¶ 7} According to IAP, beginning in 2016, DAS and OFCC began diverting and removing projects from IAP. Schneider explained that "instead of it being the agencies deciding whether or not they wanted to use [the TPA] contract, OFCC was now determining whether or not the agencies could even come to [IAP]." (Schneider Depo. at 48.) IAP contends that DAS and OFCC used a variety of tactics to steer projects away from IAP: "OFCC telling OSU that the [TPA] contract was illegal; DAS and OFCC imposing monetary thresholds for use of the TPA [contract]; OFCC labeling projects as tasks OFCC alleged were outside the [TPA] contract; OFCC taking a project and then sending it back to the state agency and avoiding IAP; and OFCC telling state agencies that if agencies used the TPA [contract] and the project went before the [C]ontrolling [B]oard that OFCC would blackball the project." (Schneider Depo., Ex. C, Pl.'s Resps. to Def. DAS' First Interrogs. at 6.)

{¶ 8} IAP alleges that DAS and OFCC impeded its provision of services under the TPA contract at three different stages: (1) DAS and OFCC diverted projects away from IAP before the agencies could engage IAP, (2) DAS and OFCC removed projects from IAP after IAP had received a task order from an agency but before IAP had received a purchase order, and (3) DAS and OFCC cancelled projects after IAP had received a purchase order from an agency. The last category—the cancelation of projects after IAP had received a purchase order—all occurred in 2016. The other two categories—the diversion and removal of projects from IAP—began in 2016 and "[n]ever ended" during the term of the TPA contract. (Schneider Depo. at 50.) As Schneider explained, "the cancelation of the projects" began and ended in 2016, but "the diversion of projects, the contract steering and all that, that continued on through the end of our contract." (Schneider Depo. at 156.)

{¶ 9}  On June 28, 2021, IAP filed suit against DAS and OFCC, alleging claims for breach of contract, quantum meruit, promissory estoppel, and misrepresentation against DAS and a claim for tortious interference with contract against OFCC.  DAS and OFCC moved to dismiss IAP's complaint for failure to state a claim pursuant to Civ.R. 12(B)(6). IAP failed to respond to the motion to dismiss.

{¶ 10} In a decision issued September 22, 2021, the Court of Claims granted DAS' and OFCC's motion as to the claims for breach of contract, promissory estoppel, and misrepresentation, but denied it as to the claims for quantum meruit and tortious interference with contract.  Only the court's ruling on the claim for breach of contract has relevance to this appeal.

{¶ 11} In its complaint, IAP had alleged that its average monthly sales volume was $3,710,292 before DAS and OFCC began diverting and removing projects, but $918,499 after.  IAP sought damages for breach of contract in the amount of profit it lost due to the diversion and removal of projects.  When moving for dismissal, DAS argued that IAP could only succeed on its breach-of-contract claim if IAP specified a provision in the TPA contract that guaranteed the combined value of the contracts it would administer would exceed some minimum value.  DAS contended that no such provision existed.  The court agreed, pointing out the TPA contract stated that "[t]he State makes no representation or guarantee that department [sic] will purchase the volume of services as advertised in the Request for Proposal." (Pl.'s Memo in Opp. to Defs.' Mot. for Summ. Jgmt., Ex. E at 1.)  The Request for Proposal had informed potential bidders that "[w]hile there is no guarantee of project values or volume, the current contract is overseeing projects in excess of $20,000,000." (Pl.'s Memo in Opp. to Defs.' Mot. for Summ. Jgmt., Ex. A at 3.)  The  Court of Claims concluded that "[e]ven if IAP's allegation that its monthly volume decreased at some point is accepted as true, * * * such a decrease in volume does not contradict that, according to the Complaint's allegations, DAS performed its promise to provide IAP with an opportunity to provide contracted services without a guarantee of the volume of services as advertised in the Request for Proposal." (Sept. 22, 2021 Decision at 9.)  The court, therefore, dismissed IAP's claim for breach of contract.

{¶ 12} On October 5, 2021, IAP moved to amend its complaint.  IAP sought to clarify its claims and allegations, and to add claims for tortious inference with business relations

and civil conspiracy. Neither DAS nor OFCC opposed this motion. In an entry dated October 8, 2021, the Court of Claims granted IAP leave to amend its complaint.

{¶ 13} In the amended complaint filed November 1, 2021, IAP filed five types of claims against DAS and OFCC. First, IAP alleged three claims for tortious inference with contract: (1) OFCC interfered with the TPA contract, (2) OFCC interfered with the contracts IAP made with state agencies to provide its third-party administrator services, and (3) DAS interfered with the contracts IAP made with state agencies to provide its third-party administrator services. Second, IAP alleged two claims for tortious interference with business relations: (1) OFCC interfered with IAP's prospective business relationships with state agencies to provide third-party administrator services, and (2) DAS interfered with IAP's prospective business relationships with state agencies to provide third-party administrator services. Third, IAP alleged that DAS and OFCC engaged in a civil conspiracy to improperly divert and remove state agency projects from IAP. Fourth, IAP sought to recover under quantum meruit for services it provided to DAS. Fifth, IAP alleged that DAS breached the TPA contract by not allowing state agencies to determine whether to engage IAP's services.

{¶ 14} After conducting discovery, DAS and OFCC moved for summary judgment. IAP opposed that motion. In a judgment issued February 3, 2023, the Court of Claims granted DAS and OFCC summary judgment on all IAP's claims.

{¶ 15} In its summary judgment decision, the Court of Claims explained the two-year statute of limitations set forth in R.C. 2743.16(A) barred all IAP's claims. To make this finding, the court relied on Schneider's deposition testimony that DAS and OFCC began diverting and removing projects from IAP, as well as cancelling projects IAP had with state agencies, beginning in 2016. The court thus concluded IAP's claims accrued, and the statute of limitations began to run, in 2016. Therefore, the court reasoned, when IAP asserted its claims five years later in 2021, they were all untimely. The court also rejected IAP's request that the court adopt the continuing violation doctrine and find all DAS' and OFCC's wrongful conduct timely as part of a continual course of conduct.

{¶ 16} Additionally, the Court of Claims provided alternative grounds for granting summary judgment on IAP's claims. Regarding IAP's claims for tortious interference, the court found that DAS and OFCC established they were justified in interfering with IAP's

contractual and business relations with the state agencies, and OFCC established that it was justified in interfering with the TPA contract. Regarding IAP's claim for civil conspiracy, the court concluded that no conspiracy between DAS and OFCC existed because a state cannot conspire with itself, and employees of both DAS and OFCC are agents of the same legal entity: the state of Ohio. Regarding IAP's claim for breach of contract, the court concluded it had already dismissed a substantially similar claim on the merits in response to DAS' and OFCC's Civ.R. 12(B)(6) motion to dismiss. Finally, regarding IAP's claim for quantum meruit, the court concluded DAS established that IAP could not prove that it had conferred a benefit on DAS.

## II. Assignments of Error

{¶ 17} IAP now appeals the February 3, 2023 judgment and assigns the following five assignments of error:

> [I.] The Court of Claims erred in granting summary judgment in favor of the Ohio Department of Administrative Services ("DAS") on Appellant Innovative Architectural Planners, Inc. ("IAP")'s breach-of-contract claim on the basis of that court's prior decision granting Appellee's Rule 12 motion to dismiss IAP's original complaint.
>
> [II.] The Court of Claims erred in holding that R.C. 2743.16's two-year statute of limitations bars all eight of IAP's claims.
>
> [III.] The Court of Claims erred in holding that DAS and the Ohio Facilities Construction Commission ("OFCC") were privileged and/or justified to commit tortious interference with IAP's contract and prospective business relations.
>
> [IV.] The Court of Claims erred in granting summary judgment in favor of DAS and OFCC on IAP's civil conspiracy claim.
>
> [V.] The Court of Claims erred in granting summary judgment in favor of DAS on IAP's alternative claim of quantum meruit (unjust enrichment).

## III. Standard of Review

{¶ 18} A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and

that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 19} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Dresher* at 293.

## IV. Tortious Interference with Contract and Business Relations

{¶ 20} To achieve greater clarity in our analysis, we will address IAP's assignments of error out of order. We begin with IAP's third assignment of error, by which IAP argues the Court of Claims erred in granting summary judgment in DAS' and OFCC's favor on IAP's claims for tortious interference with contract and tortious interference with business relations. We are not persuaded by IAP's argument.

{¶ 21} A party is liable for tortious interference with contract if the party intentionally and improperly interferes with the performance of a contract between another and a third person by inducing the third person not to perform the contract, thus causing damage. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999). To establish a claim for tortious interference with contract, a plaintiff must prove: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's

intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Id.* at paragraph one of the syllabus.

{¶ 22} A claim for tortious interference with business relations differs from a claim for tortious interference with contract in that the former claim allows recovery for improper interference with prospective contractual relations. *Bansal v. Mt. Carmel Health Sys.*, 10th Dist. No. 10AP-1207, 2011-Ohio-3827, ¶ 30; *accord One Energy Ents., L.L.C. v. Ohio Dept. of Transp.*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 73-74 (setting forth the tort as defined in 4 Restatement of the Law 2d, Torts, Section 766B (1979)). Thus, to establish a claim for tortious interference with business relations, a plaintiff must prove: (1) the existence of a business relationship, (2) the defendant's knowledge of the business relationship, (3) the defendant's intentional action to prevent a contract formation or terminate a business relationship, (4) lack of justification, and (5) resulting damages. *Becker v. Cardinal Health, Inc.*, 10th Dist. No. 20AP-424, 2021-Ohio-3804, ¶ 27.

{¶ 23} To demonstrate the fourth element, the plaintiff must present evidence that the defendant's interference with the contract or prospective contract was improper. *Fred Siegel Co.* at paragraph two of the syllabus. Determination of whether a defendant has acted improperly requires consideration of the factors set forth in Section 767 of the Restatement of the Law (Second) of Torts. *Fred Siegel Co.* at 178. Those factors are:

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

4 Restatement of the Law 2d, Torts, Section 767 (1979). Although all these factors must be weighed against each other and balanced in arriving at a judgment, "[t]he nature of the

actor's conduct is a chief factor in determining whether the conduct is improper or not." *Id.* at Comment c.

**{¶ 24}** Here, the Court of Claims granted summary judgment because it found that a reasonable person would conclude that DAS' and OFCC's interference with the contracts and prospective contracts was justified. The court determined that DAS and OFCC had a privilege to interfere because the General Assembly authorized OFCC to perform the same sort of third-party administrator role that IAP performed under the TPA contract, and the TPA contract did not require state agencies to engage IAP as the third-party administrator for their projects. While these two facts are true, they are a small part of the totality of circumstances that the court had to consider in conducting a review of the Section 767 factors to determine whether DAS and OFCC acted improperly. However, the court failed to mention, much less consider, the Section 767 factors.

**{¶ 25}** Most importantly, the court never even contemplated the nature of DAS' and OFCC's conduct. As IAP points out, it presented evidence that DAS and OFCC interfered with IAP's contracts and prospective contracts by means of alleged threats, misrepresentations, and conduct that violated the TPA contract. As we stated above, IAP avers that "OFCC [told] OSU that the [TPA] contract was illegal; DAS and OFCC impos[ed] monetary thresholds for use of the TPA [contract in contravention of the terms of that contract]; OFCC label[ed] projects as tasks OFCC alleged were outside the [TPA] contract; OFCC [took] [ ] project[s] and [sent them] back to the state agenc[ies] and avoid[ed] IAP; and OFCC [told] state agencies that if agencies used the TPA [contract] and the project went before the [C]ontrolling [B]oard that OFCC would blackball the project." (Schneider Depo., Ex. C, Pl.'s Resps. to Def. DAS' First Interrogs. at 6.) This evidence has bearing on the first Section 767 factor and it should have affected the court's summary judgment analysis. The court, therefore, erred in concluding that a reasonable person would conclude that DAS' and OFCC's conduct was justified without considering the Section 767 factors.

**{¶ 26}** An appellate court, however, may affirm the grant of a summary judgment motion on a different basis than that used by the trial court. *Ohio Academy of Nursing Homes, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 20AP-172, 2021-Ohio-1414, ¶ 18. "[A] reviewing court should not reverse a correct judgment merely because it is based on erroneous reasons." *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d

231, 2013-Ohio-3019, ¶ 51. Consequently, even if a summary judgment ruling is based on a legally erroneous analysis of the issues, an appellate court may affirm that judgment if it determines that summary judgement is appropriate, albeit for different reasons. *Keaton v. Gordon Biersch Brewery Restaurant Group, Inc.*, 10th Dist. No. 05AP-110, 2006-Ohio-2438, ¶ 17.

{¶ 27} Here, DAS and OFCC argue IAP cannot recover for any form of tortious interference because IAP has not identified an outside third party DAS or OFCC induced to breach a contract or sever a business relationship. "Under Ohio law, an action for tortious interference may only lie against an outside party to the contract or prospective business relationship." *Lundeen v. Smith-Hoke*, 10th Dist. No. 15AP-236, 2015-Ohio-5086, ¶ 42; *accord Julie Maynard, Inc. v. Whatever It Takes Transmissions & Parts*, S.D.Ohio No. 3:19-cv-238 (Mar. 16, 2020), quoting *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1216 (6th Cir.1989) ("Because tortious interference requires interference by a third party, '[a]n essential element of the tort is interference by someone who is not a party or agent of the party to the contract or relationship at issue.' "); *Dorricott v. Fairhill Ctr. for Aging*, 2 F.Supp.2d 982, 989 (N.D.Ohio 1998), *aff'd*, 187 F.3d 635 (6th Cir.1999) ("An essential element of the tort is interference by someone who is not a party or agent of the party to the contract or relationship at issue."). As to the claim for tortious interference with contract, the reason for this limitation is that holding a party liable for interfering with its own contract would convert a breach-of-contract claim into a tort claim. *Lundeen* at ¶ 42. As to the claim for tortious interference with business relations, that tort "does not exist where the defendant was the source of the business opportunity allegedly interfered with." (Internal quotations and citation omitted.) *Id.*, quoting *Pasqualetti v. Kia Motors Am., Inc.*, 663 F.Supp.2d 586, 602 (N.D.Ohio 2009).

{¶ 28} In this case, IAP asserts OFCC interfered with the TPA contract between IAP and DAS. A careful reading of the TPA contract, however, shows that the parties to that contract are actually IAP and the state of Ohio. We thus will construe IAP's assertion to be that OFCC interfered with IAP's contract with the state of Ohio. IAP also claims DAS and OFCC interfered with IAP's contracts and prospective contracts with state agencies for IAP to serve as a third-party administrator for agency projects.

{¶ 29} In response to IAP's assertions, DAS and OFCC argue that all of the state entities at issue—the state of Ohio, DAS, OFCC, and the nameless state agencies—are all really one entity: the state of Ohio. DAS and OFCC, therefore, contend that all IAP's tortious interference claims must fail because IAP fails to allege interference by an entity who is not a party to the contracts and business relationships at issue. According to DAS and OFCC, IAP essentially claims the state of Ohio interfered with IAP's contracts and business relations with the state of Ohio.

{¶ 30} This court has already addressed the complete degree to which the state of Ohio and its agencies, departments, and instrumentalities identify with each other:

> The question is whether the different agencies, departments, and instrumentalities are all considered to be the State of Ohio * * *. We believe that they are. Regardless of which agency is acting, it is doing so in order to advance or protect the state's interests—whether by providing for the education of its children, by securing retirement funds for its employees and teachers, or by building and maintaining safe public thoroughfares. The state is not a conglomeration of individual actors under a single umbrella entity; it is a single actor playing countless roles in order to exercise its power efficiently.

*Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 168 Ohio App.3d 592, 2006-Ohio-4779, ¶ 46 (10th Dist.).[1]

{¶ 31} Consequently, each and every state agency, department, and instrumentality constitutes the state of Ohio. IAP's tortious interference claims, therefore, must fail because IAP does not name any party that interfered with its contracts and business relationships other than the state of Ohio—the other party to those contracts and business relationships.

---

[1] We recognize that we recently decided a case that could be construed to conflict with the holding of *Alternatives Unlimited-Special, Inc.* In *State Bur. of Workers' Comp. v. Price*, 10th Dist. No. 23AP-82, 2023-Ohio-4395, we considered whether collateral estoppel precluded the Ohio Bureau of Workers' Compensation ("BWC") from relitigating facts originally agreed to by stipulation during a criminal prosecution in a subsequent civil action that the BWC brought against the defendant seeking damages for overbilling. We thus had to determine whether the state of Ohio, the prosecuting party in the criminal action, and the BWC, the plaintiff in the civil action, were the same parties or privies. We held they were not. *Id*. at ¶ 20. In doing so, we applied the rule that the victim of a crime and the state of Ohio are not in privity when the victim seeks damages after a criminal case. *Id*. at ¶ 21-22. Moreover, we reasoned that although the criminal case named the state of Ohio as the prosecuting party, the Franklin County Prosecutor's Office controlled the litigation of the case, including the decision whether to appeal an unfavorable judgment. *Id*. at ¶ 22. We thus held that due to "the lack of privity between the Franklin County Prosecutor's Office and the BWC, the factual stipulations at issue have no preclusive effect." *Id*. at ¶ 23. Given the differing facts and issues in *Price*, we find that case's analysis and outcome distinguishable from and irrelevant to this case.

Accordingly, the Court of Claims did not err in granting DAS and OFCC summary judgment on IAP's tortious interference claims, and we overrule the third assignment of error.

## V. Civil Conspiracy

{¶ 32} By its fourth assignment of error, IAP argues the court erred in granting summary judgment in DAS' and OFCC's favor on the claim for civil conspiracy. We conclude the court did not err as alleged.

{¶ 33} "The tort of civil conspiracy is a ' "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." ' " *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998), quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). To establish a claim for civil conspiracy, a party must prove: (1) a malicious combination of two or more persons, (2) resulting injury to another's person or property, and (3) the existence of an unlawful act independent from the conspiracy itself. *Woods v. Sharkin*, 8th Dist. No. 110567, 2022-Ohio-1949, ¶ 103; *Walter v. ADT Sec. Sys., Inc.*, 10th Dist. No. 06AP-115, 2007-Ohio-3324, ¶ 36.

{¶ 34} No civil conspiracy exists when all the alleged co-conspirators are members of the same corporate entity because there are not two separate people to form a conspiracy. *Gallagher v. Cochran*, 8th Dist. No. 109081, 2020-Ohio-4917, ¶ 72; *Bays v. Canty*, 330 Fed.Appx. 594 (6th Cir.2009); *Nuovo v. Ohio State Univ.*, 726 F.Supp.2d 829, 845 (S.D.Ohio 2010). Just as it is not possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of a corporation and its agents to conspire with itself. *Bays* at 594; *Dickerson v. Alachua Cty. Comm.*, 200 F.3d 761, 767 (11th Cir.2000). This principle, called the intracorporate-conspiracy doctrine, provides that:

> [A]n agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy. * * * The rule is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then

follows that there has not been an agreement between two or more separate people.

*Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).

{¶ 35} Courts have applied the intracorporate-conspiracy doctrine to both private corporations, as well as public, government entities. *Dickerson* at 767. Consequently, employees of the same city, county, or state are incapable of conspiring together because they are all members of the same legal entity. *Daudistel v. Silverton*, 1st Dist. No. C-130661, 2014-Ohio-5731, ¶ 45-46 (holding that no conspiracy existed where the alleged co-conspirators were the city manager and other municipal employees and elected and appointed officials because there were "not two separate 'people' to form a conspiracy"); *DeSandre v. Cty. of Oscoda*, E.D.Mich. No. 20-12209 (Aug. 27, 2021) (holding that employees of two different county departments were employed by the same legal entity for purposes of the intracorporate-conspiracy doctrine); *K.O. v. United States Immigration & Customs Enforcement*, 468 F.Supp.3d 350, 369 (D.D.C.2020) (holding that numerous courts "have applied the intracorporate conspiracy doctrine to different entities within state and local governments"); *Ezell v. Wells*, N.D.Tex. No. 2:15-CV-00083-J (July 10, 2015) ("Most cases involving allegations of a conspiracy among various municipal employees have found that those employees were members of a single legal entity—the municipality— and thus were incapable of conspiring with each other."); *Vlahadamis v. Kiernan*, 837 F.Supp.2d 131, 157 (E.D.N.Y.2011) ("Here, all of the individual defendants are employees of the same entity: the Town of Southampton. It matters not that they hail from different departments within the Town's governing structure; they are still covered by the [intracorporate-conspiracy] doctrine and therefore any claims that they conspired amongst themselves necessarily fails."); *York v. Riley*, M.D.Ala. No. 2:09cv1163-MEF (July 15, 2010), *recommendation adopted* (Aug. 3, 2010) (governor and other state elected officials could not conspire together pursuant to the intracorporate-conspiracy doctrine); *McEvoy v. Spencer*, 49 F.Supp.2d 224, 226 (S.D.N.Y.1999) ("The individual defendants here are employees of the defendant City of Yonkers. True, they work for different departments of the City, but that is of no more moment in the municipal context than it would be if the individual defendants worked for the Mainframe and Personnel Divisions of IBM and were

accused of conspiring with their employer corporation to discriminate against another employee.").

{¶ 36} In this case, IAP alleges that employees of DAS and OFCC conspired together to divert and remove state agency projects from IAP. In response, DAS and OFCC assert their employees are all employed by a single legal entity: the state of Ohio. DAS and OFCC thus argue their employees are incapable of conspiring together. We agree. Under the intracorporate-conspiracy doctrine, IAP cannot establish two or more people conspired against it because all the alleged co-conspirators were members of the same legal entity. Accordingly, we conclude the Court of Claims did not err in granting DAS and OFCC summary judgment on IAP's claim for civil conspiracy, and we overrule the fourth assignment of error.

## VI. Quantum Meruit

{¶ 37} By its fifth assignment of error, IAP argues the Court of Claims erred in granting summary judgment in DAS' favor on IAP's claim for quantum meruit. We disagree.

{¶ 38} Generally, a party may recover in quantum meruit when it "confers some benefit upon another [party] without receiving just compensation for the reasonable value of services rendered." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). A claim for quantum meruit shares the same elements as a claim for unjust enrichment, another equitable doctrine. *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 16AP-742, 2017-Ohio-1461, ¶ 26; *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 37 (10th Dist.). Thus, to recover under quantum meruit, a plaintiff must establish: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) the defendant's retention of the benefit would be unjust without payment to the plaintiff. *Three-C Body Shops, Inc.* at ¶ 26; *Meyer* at ¶ 37.

{¶ 39} In response to DAS' motion for summary judgment on IAP's claim for quantum meruit, IAP asserted it was entitled to recover in quantum meruit for those services it rendered on projects it could not complete because DAS or OFCC removed them from IAP before IAP received a purchase order from the agency. IAP alleged it performed significant preparatory work on those projects, but it never received any payment for that work. The court granted DAS summary judgment on the quantum meruit claim because

Schneider could not explain how IAP's preparatory work on the projects benefited DAS. Without evidence that IAP conferred a benefit on DAS, IAP could not recover in quantum meruit.

{¶ 40} During her deposition, Schneider testified as follows:

Q. Did DAS receive a benefit from [IAP] doing the services when projects didn't go forward?

A. I believe as a result of [IAP] complying with the [TPA] contract and not having any problems with our contractual relationship prior to that that, yeah, [DAS] received a benefit because * * * that's [DAS'] role, they're administrative services. And [DAS'] role is to make life easier * * * for the agencies, and that's why [DAS] put [the TPA] contract out to begin with. So they were * * * receiving [a] benefit because the work that they wanted to have done on behalf of the agencies was being done.

Q. Except when it wasn't?

A. But it was.

Q. Well, no, * * * if the projects didn't go forward * * * how did DAS benefit?

A. DAS benefitted because * * * the projects were then taken and put out again by another entity.

* * *

A. [DAS] got the work twice * * *.

Q. Did [DAS] use any of the scope of work you performed?

A. I have no idea. I have no idea.

* * *

A. I can't prove to you or tell you exactly what benefit DAS received as a result of the work that was done. But I can tell you that contractually, they were obligated to pay us for the work that was done. As soon as we received a purchase order, we were entitled to our fees. I guess that's the best way to answer it.

(Schneider Depo. at 114-15.)

{¶ 41} Given this testimony, we agree with the Court of Claims that the evidence does not establish that IAP's preparatory work on uncompleted projects conferred any benefit on DAS. Schneider ultimately admitted she could not prove or state "exactly what benefit DAS received as a result of the work that was done." (Schneider Depo. at 115.) Based on this testimony, the court did not err in granting DAS summary judgment on IAP's quantum meruit claim. Accordingly, we overrule the fifth assignment of error.

## VII.  Breach of Contract

{¶ 42} We now return to IAP's first assignment of error, by which IAP argues the court erred in relying on its dismissal of the breach-of-contract claim as a basis for granting summary judgment on the breach-of-contract claim asserted in the amended complaint. We agree.

{¶ 43} In granting DAS summary judgment on IAP's claim for breach of contract, the court stated that its dismissal of IAP's claim for breach of contract operated as an adjudication on the merits. The court then concluded that, as a matter of law, DAS was entitled to summary judgment in its favor on the claim for breach of contract that IAP asserted in its amended complaint. The Court of Claims' reasoning implies the court accorded its dismissal ruling preclusive effect. However, neither the doctrines of res judicata nor law of the case renders the dismissal judgment determinative as to summary judgment on the breach-of-contract claim.

{¶ 44} The doctrine of res judicata "bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior proceeding." *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, ___ Ohio St.3d ___, 2023-Ohio-3097, ¶ 15. Because interlocutory orders are not final, the doctrine of res judicata does not apply to them. *Beck-Durell Creative Dept., Inc. v. Imagining Power, Inc.*, 10th Dist. No. 02AP-281, 2002-Ohio-5908, ¶ 16. The September 22, 2021 dismissal entry was an interlocutory order because it did not resolve all the pending claims and it did not contain Civ.R. 54(B) language. *See Scott v. First Choice Auto Clinic, Inc.*, 10th Dist. No. 22AP-157, 2022-Ohio-3405, ¶ 14, quoting *VanDyke v. Columbus*, 10th Dist. No. 06AP-1114, 2007-Ohio-2088, ¶ 8 (" 'Without an express determination that there is no just cause for delay, any order, that adjudicates fewer than all the claims does not terminate the action.' ").

Consequently, res judicata did not bar the litigation of the viability of the amended claim for breach of contract on summary judgment.

{¶ 45} The law-of-the-case doctrine " 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶ 15, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Under certain circumstances, the law-of-the-case doctrine encompasses a trial court's adherence to its own prior rulings. *APCO Industries, Inc. v. Braun Constr. Group, Inc.*, 10th Dist. No. 19AP-430, 2020-Ohio-4762, ¶ 37. Specifically, the doctrine gives preclusive effect to a trial court ruling that could have been appealed but has been abandoned by a failure to do so. *Bank One Trust Co., N.A. v. Scherer*, 10th Dist. No. 11AP-1140, 2012-Ohio-5302, ¶ 45. Here, because IAP could not have appealed the September 22, 2021 dismissal entry given its interlocutory character, the law-of-the-case doctrine confers no preclusive effect on that entry.

{¶ 46} We thus turn to reviewing whether the trial court erred in finding there were no material issues of genuine fact as to the elements of the breach of contract claim, and thus, DAS was entitled to judgment as a matter of law on that claim. To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff under the contract, (3) breach of the contract by the defendant, and (4) damages or loss resulting from the breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41; *Campbell v. 1 Spring, L.L.C.*, 10th Dist. No. 19AP-368, 2020-Ohio-3190, ¶ 5. A breach of contract occurs when a defendant does not perform one or more of the terms of the contract. *DN Reynoldsburg, L.L.C. v. Maurices, Inc.*, 10th Dist. No. 20AP-57, 2022-Ohio-949, ¶ 18. Generally, a plaintiff must present sufficient evidence to show entitlement to damages in an amount ascertainable with reasonable certainty. *Natl. Contracting Group, Ltd. v. P&S Hotel Group, Ltd.*, 10th Dist. No. 20AP-144, 2021-Ohio-2940, ¶ 24.

{¶ 47} In moving for summary judgment, DAS first argued that IAP could not establish a breach of the TPA contract. In response, IAP contended that DAS breached the provision of the TPA contract that provides "[t]he agency is eligible to make purchases of the contracted services in any amount and at any time as determined by the agency." (Pl.'s

Memo in Opp. to Defs.' Mot. for Summ. Jgmt., Ex. E at 1.) IAP maintained that DAS breached that contractual provision by preventing state agencies from choosing IAP as a third-party administrator and by removing projects from IAP after agencies had issued task orders to IAP.

{¶ 48} As we stated before, IAP presented evidence that "OFCC [told] OSU that the [TPA] contract was illegal; DAS and OFCC impos[ed] monetary thresholds for use of the TPA [contract in contravention of the terms of that contract]; OFCC label[ed] projects as tasks OFCC alleged were outside the [TPA] contract; OFCC [took] [ ] project[s] and [sent them] back to the state agenc[ies] and avoid[ed] IAP; and OFCC [told] state agencies that if agencies used the TPA [contract] and the project went before the [C]ontrolling [B]oard that OFCC would blackball the project." (Schneider Depo., Ex. C, Pl.'s Resps. to Def. DAS' First Interrogs. at 6.) Therefore, IAP has raised a question of fact as to whether DAS has impeded the state agencies' ability to engage IAP as a third-party administrator. Because the TPA contract empowers the state agencies to decide whether to hire IAP, DAS' actions could constitute a breach of the TPA contract.

{¶ 49} In moving for summary judgment, DAS also argued that IAP could not prove damages arising from the breach of contract. In making this argument, DAS pointed to Schneider's inability to identify, much less value, those projects DAS diverted from IAP before the state agencies could engage IAP. Schneider testified she could not say "what projects [IAP] didn't receive because [IAP] didn't receive them." (Schneider Depo. at 67.) IAP only knew about the diversion of those projects because "there were projects that * * * were done by some of [IAP's] contractors that would have come through [IAP] to be procured." (Schneider Depo. at 66.)

{¶ 50} DAS' argument, however, ignores that IAP introduced evidence from which it could conceivably demonstrate its damages with reasonable certainty. IAP attached to its memorandum in opposition to summary judgment two lists, both verified by Schneider. Exhibit F listed all projects IAP completed and received payment for pursuant to the TPA contract, as well the values of those projects. IAP posited that it could use the information contained in exhibit F to calculate the profits it lost because of DAS' breaches. The second list, exhibit G, enumerated those projects that DAS removed from IAP after state agencies submitted task orders to IAP. In addition to naming the removed projects, exhibit G also

included the values of the projects. Based on the project values, IAP calculated it lost $3.8 million in contract fees due to DAS' alleged breaches. Given this evidence, we determine that a question of fact remains as to whether IAP can prove damages for breach of contract.

{¶ 51} In sum, we conclude the Court of Claims erred in granting summary judgment on IAP's claim for breach of contract on grounds that it had dismissed IAP's earlier claim for breach of contract and no questions of fact remained regarding the claim. Accordingly, we sustain IAP's first assignment of error.

## VIII. Statute of Limitations

{¶ 52} By its second assignment of error, IAP argues the Court of Claims erred in finding the statute of limitations barred all eight of its claims. In resolving the previous four assignments of error, we have concluded the court did not err in granting summary judgment in DAS' and OFCC's favor on all claims but IAP's claim for breach of contract. Consequently, the resolution of the previous assignments of error have rendered moot most of this assignment of error. We only address whether the court erred in determining that the statute of limitations barred IAP's claim for breach of contract.

{¶ 53} Civil actions against the state "shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." R.C. 2743.16(A). In suits between private parties, with certain inapplicable exceptions, a party must bring an action on a written contract within six years after the cause of action accrues. R.C. 2305.06. Therefore, the two-year statute of limitations contained in R.C. 2743.16(A) applies to IAP's claim for breach of contract.

{¶ 54} Generally, " '[a] cause of action for breach of contract does not accrue until the complaining party suffers actual damages as a result of the alleged breach.' " *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 13, quoting *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.*, 42 Ohio App.3d 6 (9th Dist.1988), paragraph one of the syllabus. The complaining party's actual damage typically arises at the time of the breach, although not always. *Columbus Green Bldg. Forum v. State*, 10th Dist. No. 12AP-66, 2012-Ohio-4244, ¶ 27.

{¶ 55} In an exception to the general rule of accrual, this court has recognized that a claim for breach of contract may accrue after an initial breach where a contract provides for

continuing performance over a period of time.  *See Agrawal v. Univ. of Cincinnati*, 10th Dist. No. 16AP-293, 2017-Ohio-8644, ¶ 16; *Singleton v. Adjutant Gen. of Ohio*, 10th Dist. No. 02AP-971, 2003-Ohio-1838, ¶ 22.  In *Agrawal*, we explained:

> Where a contract calls for continuous performance, it is "capable of a series of 'partial' breaches, as well as a single total breach by repudiation or by such a material failure of performance when due as to go 'to the essence' and frustrate substantially the purpose for which the contract was agreed to by the injured party."  4 Corbin on Contracts, Ch. 53 § 956 (1951); *see also Won's Cards, Inc. v. Samsondale/Haverstraw Equities, Ltd.*, 566 N.Y.S.2d 412 (N.Y.App.Div.1991) (recognizing continuing breach concept). If the breaches are partial and ongoing, each one re-commences the statute of limitations such that damages can be awarded beginning "from the date calculated by subtracting the limitations period from the date of filing." *West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546 (2d Cir.1990).

*Id.* at ¶ 16, quoting *Kwan v. Schlein*, 441 F.Supp.2d 491, 501 (S.D.N.Y.2006).

{¶ 56}  In other words, under a continuing breach theory of accrual, where a contract provides for continuing performance, " 'each breach may begin the running of the statute [of limitations] anew such that accrual occurs continuously.' "  *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir.2020), quoting *Stalis v. Sugar Creek Stores, Inc.*, 744 N.Y.S.2d 586, 587 (N.Y.App.Div.2002); *accord Curry v. Trustmark Ins. Co.*, 600 Fed.Appx. 877, 880 (4th Cir.2015), quoting *Singer Co. v. Baltimore Gas & Elec. Co.*, 79 Md.App. 461, 474 (1989) (" '[W]here a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.' ").  However, this exception to the general rule of accrual is narrow; it only applies where there are a series of independent and distinct breaches, not a single breach with continuing harm. *Phoenix Light SF Ltd. v. Deutsche Bank Natl. Trust Co.*, 585 F.Supp.3d 540, 577 (S.D.N.Y.2022); *Nuance Communications, Inc. v. Internatl. Business Machines, Inc.*, 544 F.Supp.3d 353, 382 (S.D.N.Y.2021).  The exception "is a response to the inequities that would arise if the expiration of the limitations period following a first breach * * * were sufficient to bar suit for any subsequent breach * * *; parties engaged in long-standing

misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1198 (2013).

{¶ 57} In this case, the parties entered an ongoing contract for the provision of third-party administrator services which extended from May 30, 2015 to December 31, 2019.[2] Schneider testified that DAS first breached the TPA contract in 2016 by diverting projects from IAP; removing projects from IAP after it had received a task order from an agency, but before IAP had received a purchase order; and cancelling projects after IAP had received a purchase order from an agency. Regarding the cancelled projects, Schneider testified that "the biggest bulk" of the cancellations occurred in April or May 2016 and she "[did not] think there were any after 2016." (Schneider Depo. at 47.) Regarding the diversion and removal of projects, Schneider testified that type of interference with the TPA contract began in 2016 and "[n]ever ended." (Schneider Depo. at 50.)

{¶ 58} Thus, IAP has alleged that DAS partially breached the TPA contract—a contract that required IAP's continuous performance—numerous times throughout the lifetime of the contract. Each time DAS diverted, removed, or cancelled projects, it allegedly partially breached the TPA contract. We conclude that each of those partial breaches began the running of the two-year statute of limitations anew.

{¶ 59} IAP filed its action against DAS on June 28, 2021. The applicable statute of limitations is two years. R.C. 2743.16(A). Therefore, under the continuing breach theory of accrual, the breaches that occurred within the two-year window between June 28, 2019 and June 28, 2021 gave rise to timely claims. According to the evidence adduced on summary judgment, DAS never stopped diverting and removing projects from IAP during the lifetime of the TPA contract, and the contract did not end until December 31, 2019. Consequently, any breaches that occurred between June 28, 2019 (the date IAP filed its complaint) and December 31, 2019 (the date the contract terminated) resulted in claims that accrued within the two-year statute of limitations. IAP thus potentially has timely claims for breach of contract to pursue.

---

[2] The parties amended the TPA contract to add three months to the end of the contractual term, but only for the limited purpose of completing specific projects.

{¶ 60} IAP, however, argues this court should apply the continuing violation doctrine to allow it to recover for *all* the breaches it has alleged. The continuing violation doctrine differs from the continuing breach theory. Under the continuing breach theory, a party may recover for "fresh breaches" committed within the statute of limitations, notwithstanding the existence of similar "stale breaches" of the same contract provisions, for which the party could not recover because they occurred outside of the statute of limitations. *Poly-Med, Inc. v. Novus Scientific PTE, Ltd.*, 841 Fed.Appx. 511, 515 (4th Cir.2021). On the other hand, under the continuing violation doctrine, "a course of misconduct is not divided into acts occurring inside and outside the limitations period, but is instead aggregated into 'one single violation that, taken as a whole, satisfies the applicable statute of limitations.' " *Id.*, quoting *Hamer v. Trinidad*, 924 F.3d 1093, 1100 (10th Cir.2019). The continuing violation doctrine effectively tolls the statute of limitations so that the plaintiff has a cause of action for any damages suffered from the start of the misconduct until the end. *Id.* at 515-16; *Natl. Parks Conservation Assn., Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 416 (6th Cir.2007), quoting *Gandy v. Sullivan Cty.*, 24 F.3d 861, 864 (6th Cir.1994) (" 'The [continuing violation] doctrine * * * may allow a court to impose liability on [a defendant] for acts committed outside the limitations period.' ").

{¶ 61} In refusing to apply the continuing violation doctrine to a takings case, the Supreme Court of Ohio repeated the observation of the United States Court of Appeals for the Sixth Circuit that " ' "[c]ourts have been extremely reluctant to apply this doctrine outside the context of Title VII." ' " *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 31, quoting *Natl. Parks Conservation Assn., Inc.* at 416, quoting *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir.1995), fn. 3. At least two Ohio courts, including this one, have refused to extend the continuing violation doctrine to breach-of-contract cases. *Cooper v. W. Carrollton*, 2d Dist. No. 27789, 2018-Ohio-2547, ¶ 39, 41; *Marok v. Ohio State Univ.*, 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 26. We see no reason to deviate from prior precedent, particularly as the equitable concerns IAP raises are ameliorated through the application of the continuing breach theory. Accordingly, we decline to adopt the continuing violation doctrine and apply it to IAP's claim for breach of contract.

{¶ 62} In sum, we conclude the court erred in finding IAP's claim for breach of contract untimely and granting DAS summary judgment as to alleged breaches that occurred between June 28and December 31, 2019.  We thus sustain IAP's second assignment of error on that ground.  We conclude that our resolution of IAP's other four assignments of error renders the remainder of the second assignment of error moot.

## IX.  Conclusion

{¶ 63} For the foregoing reasons, we sustain the first assignment of error, sustain the second assignment of error in part and render it moot in part, and overrule the third, fourth, and fifth assignments of error.  We affirm the judgment of the Court of Claims of Ohio in part and reverse it in part.  We remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part and*
*reversed in part; cause remanded.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

———————